Below is an order of the court.

*Teresa H. Pearson*

TERESA H. PEARSON
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Bankruptcy Case No. 22-31873-thp11 |
| | **FIRST AMENDED** |
| Blue Moon Property Group, LLC | ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B) |
| Debtor-in-Possession | |

Debtor-in-Possession Blue Moon Property Group, LLC's ("Debtor-in-Possession" or "Debtor") Chapter 11, Subchapter V, Plan Dated 02/07/23 (the "Plan") having been filed by the Debtor and a hearing having been held before this Court on April 4, 2023; and the Court finds that after hearing that the requirements for confirmation set forth in in 11 U.S.C. §1191(b) are satisfied;

The Court further finds that the Plan was properly transmitted to creditors and parties in interest and that all objections to the Plan, if any, have been resolved;

The Court further finds that there are no unpaid fees due to the clerk, provided, however, pursuant to LBR 3020-1(b)(1)(B), that if there are any unpaid fees, payment is required no later than 14 days after the order is entered;

Page 1 of 6    **FIRST AMENDED** ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 22-31873-thp11    Doc 89    Filed 04/14/23

The Court further finds that the proposed amendments by interlineation set forth below to Debtor's Plan do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the amendments, and therefore, such amendments shall be deemed accepted by all creditors and equity security holders (if applicable) who have previously accepted the Plan; and

**NOW, THEREFORE, IT IS ORDERED AS FOLLOWS:**

1.     The Plan, a copy of which is attached to this Order marked **Exhibit 1**, filed by the Debtor, is confirmed pursuant to Section 1191(b) as modified by this order;

2.     The following amendments by interlineation to the Debtor's Plan shall be made:

With respect to the provisions of the Order Authorizing Sale of Real And Personal Property Free And Clear Of Liens, Compensation Of Real Estate Broker (the "Sale Order") attached hereto as **Exhibit** 2, those terms are incorporated by reference and the Plan is deemed modified consistent with the same.

With respect to Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9; Nationstar Mortgage LLC as servicer (collectively hereinafter "Deutsche Bank"), the terms of the Stipulation re: Non-Material Modifications to Debtor's Sub V Chapter 11 Plan and Treatment of Claim (the "Claim Stipulation") attached hereto as **Exhibit 3**, is incorporated by reference and the Plan is deemed modified consistent with the same.

¶ 2.2(A):     With respect to Class 3, strike "Impaired" and replace with "Unimpaired";

¶ 2.2(C):     With respect to Class 4, strike "$302,162.29" and replace with "414,412.25" and strike "1" with respect to the referenced exhibit and replace with "4". In

**FIRST AMENDED** ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

addition, strike **Exhibit 1 of the Plan** in its entirety and replace it with **Exhibit 4** attached hereto;

¶ 2.2(D):     Strike "4"; replace with "5";

¶ 2.5:     With respect to the paragraph starting with "If the escrow agent can make payment to Allowed Secured Claims …", strike in its entirety and replace with "If the escrow agent can make payment to Allowed Secured Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to Holders of Administrative Expenses and Priority Tax Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor; thereafter, the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Administrative Expenses and Priority Tax Claims.";

¶ 2.5:     With respect to the paragraph starting with "If the escrow agent can make payment to Administrative Expenses and Priority Tax Claims …", strike in its entirety and replace with "If the escrow agent can make payment to Administrative Expenses and Priority Tax Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to make payment to Holders of Allowed Unsecured Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor; thereafter, the Debtor, pursuant

**FIRST AMENDED** ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Allowed Unsecured Claims.";

¶ 2.9:     With respect to the paragraph starting with "If the Debtor has not completed the sale", strike the first sentence in its entirety and replace with "If either (1) the Debtor has not completed the sale of the Southshore Property and does not have the Southshore Property under contract for sale on the Sale Date, or, (2) if the Debtor has not completed the sale of the Southshore Property by that date forty-five (45) days after the Sale Date, Kenneth Eiler shall, without further notice, be vested with full, exclusive and plenary power to sell the Southshore Property.";

¶ 2.11:    Strike "articles of incorporation"; replace with "articles of organization";

¶ 2.12:    Strike "general"; replace with "generate";

¶ 2.11:    Strike "Amended Plan"; replace with "Plan";

¶ 4:       Strike "**Exhibit 1**"; replace with "**Exhibit 4**";

¶ 6.6:     With respect to the second sentence, starting with "Furthermore," strike the second sentence in its entirety;

Add ¶ 6.9:  "**6.9 <u>Modification of Articles of Organization</u>.**  The Debtor's articles of organization and, if applicable, operating agreement shall be deemed modified to include a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the

**FIRST AMENDED** ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

election of directors representing such preferred class in the event of default in the payment of such dividends.";

¶ 7:        Strike "**Exhibit 1 – Liquidation Analysis**"; replace with "~~Exhibit 1 – Liquidation Analysis~~ [INTENTIONALLY OMITTED]"; Add at the end of such article "**Exhibit 4 – Liquidation Analysis**";

¶ 9.14:     Strike "U.S. Outdoor Holding LLC"; replace with "Blue Moon Property Group, LLC"; and

¶ 9.34:     Strike "September 4, 2020"; replace with "November 9, 2022" in the definition of Petition Date.

        3.      For the ease of the Court and parties, counsel for the Debtor has prepared an exemplar Plan reflecting the enumerated changes above; counsel for the Debtor reports that, given the nature of the Sale Order and Claim Stipulation, exact implementation was not possible. Accordingly, while the exemplar Plan, attached hereto as **Exhibit 5**, reflects the enumerated changes described herein, the controlling documents remain the Plan, as filed, this order, including its incorporation of the Sale Order, and the Claim Stipulation.

###

**FIRST AMENDED** ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 22-31873-thp11     Doc 89     Filed 04/14/23

**PRESENTED BY**:

VANDEN BOS & CHAPMAN, LLP


By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor-in-Possession

**LBR 9021-1 CERTIFICATION**
I certify that I have complied with the requirement of LBR 9021-1(a); the form of order is an amendment to correct non-material errors and was circulated to the following parties:  (1) the Subchapter V Trustee; and (2) counsel for the United States Trustee.

By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor-in-Possession

**First Class Mail:**


**Electronic Mail:**

The foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system.

Page 6 of 6

**FIRST AMENDED** ORDER CONFIRMING DEBTOR-IN-POSSESSION'S CHAPTER 11, SUBCHAPTER V, PLAN (DATED: 02/07/23) UNDER SECTION 1191(B)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 22-31873-thp11    Doc 89    Filed 04/14/23

Christopher N. Coyle OSB# 073501
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

Of Attorneys for Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 22-31873-thp11 |
| Blue Moon Property Group, LLC | **CHAPTER 11, SUBCHAPTER V, PLAN**<br>(Dated: 02/07/2023) |
| Debtor-in-Possession | |

### SMALL BUSINESS DEBTOR'S CHAPTER 11, SUBCHAPTER V, PLAN

Debtor-in-Possession Blue Moon Property Group, LLC, as debtor and debtor-in-possession (the "Debtor" or "BMPG") in the above-captioned chapter 11, subchapter V, case (the "Chapter 11 Case") hereby submits this Chapter 11, Subchapter V, Plan (the "Plan").

### NOTICE TO INTERESTED PARTIES RE: THE PLAN

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, to evaluate the terms of this Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DATE SET FORTH IN THE NOTICE OF HEARING, WHICH WILL BE MAILED TO YOU SEPARATELY.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney. Questions regarding this Plan may be directed to the Attorneys for the Debtor-in-Possession using the contact information provided above. Please be aware that, as the legal representatives of the Debtor-in-Possession, the Attorneys cannot provide other parties with legal advice.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 1 - Page 1 of 35**
Case 22-31873-thp11    Doc 89    Filed 02/04/23

# SECTION 1
# HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1. <u>Nature of the Debtor's Business.</u>

The Debtor is a Oregon domestic business corporation with a principal place of business in Lake Oswego, Oregon. The Debtor is a wholly-owned subsidiary of Brilliant Homes, LLC which owns certain residential real estate located at 3220 Southshore Blvd, Lake Oswego, OR 97034 (the "Southshore Property") which Brilliant Homes, LLC and itself have redeveloped and prepared for sale.

### 1.2. <u>History of Business Operations of the Debtor</u>

The Debtor was formed on November 9, 2022 with the intent to serve as a special purpose entity relating to the redevelopment and sale of the Southshore Property

### 1.3. <u>Filing of the Debtor's Chapter 11 Case.</u>

On November 9, 2022 (the "Petition Date"), a voluntary petition seeking relief under chapter 11, subchapter V, of title 11 of the United States Code (the "Bankruptcy Code") was filed by the Debtor.

### 1.4. <u>Legal Structure and Ownership.</u>

Membership interests in the Debtor are as follows:

    Brilliant Homes, LLC:    100.0%

### 1.5. <u>Debtor's Assets.</u>

A Summary of the Debtor's Assets is included as part of the Liquidation Analysis attached hereto as **Exhibit 1**. The valuations for the assets are based on the Debtor's assessment of the market values.

### 1.6. <u>Debtor's Liabilities.</u>

A Claims Summary is included on **Exhibit 2**, attached hereto.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

### 1.7.  Current and Historical Financial Conditions.

The Debtor was formed just prior to the Petition Date, so there is no historic financial information for the Debtor. The Debtor's current financial performance is of limited relevance to the Plan; as described in Article 2, the Debtor's Plan proposes the sale of the Southshore Property together with interim operations to enable adequate protection payments to secured lender(s) as described herein. With respect to the Debtor's current financial condition, please see **Exhibits 1** and **2**, relating to assets and claims, and the most recent Monthly Operating Report attached hereto as **Exhibit 3**.

### 1.8.  Significant Events During the Bankruptcy Case.

The Debtor-in-Possession has taken a number of steps in anticipation of the filing and confirmation of the Plan. These include, but are not limited to, the following:

- Continued marketing of the Southshore Property to maximize the value of the property for holders of Claims, including substantial price reductions;
- Employment of real estate professionals to continue marketing of the Southshore Property;
- Negotiations with holders of Claims to determine amicable treatment of Claims following sale, either prior to or following confirmation of the Plan;

### 1.9.  Projected Recovery of Avoidable Transfers.

The Trustee has the exclusive right and sole discretion to pursue any actions arising under chapter 5 of the Code under this Plan. If you received a payment or other transfer of property within 90 days of bankruptcy, the Trustee may seek to avoid such transfer. Any funds recovered from such avoided transfers shall be used to make additional payments to Creditors under the Amended Plan.

### ARTICLE 2
### THE PLAN

The Debtor's Plan describes how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 1 - Page 3 of 35**

Case 22-31873-thp11      Doc 89      Filed 02/07/23

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1.    <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A.    **Administrative Expenses.**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or, in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.    If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 4 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Paid in the ordinary course or, if not paid, paid from Southshore Property Proceeds. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | N/A |
| Professional fees | $30,000 (estimated) | Upon application under §330 and after Bankruptcy Court approval, preconfirmation professional fees paid in full from Southshore Property Proceeds; postconfirmation amounts to be paid from Southshore Property Proceeds. |
| Subchapter V Trustee | $5,000 (estimated) | Upon application under §330 and after Bankruptcy Court approval, preconfirmation amount paid in full from Southshore Property Proceeds; postconfirmation amounts to be paid from Southshore Property Proceeds. |
| TOTAL | $35,000.00 | |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 5 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

## B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority | Estimated Amount Owed | Treatment |
|---|---|---|
| IRS | $ 0.00 | Not Applicable. |
| ODR | $0.00 | Not Applicable. |

## 2.2.    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

## A.    Classes of Secured Claims.

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class | Description | Claim Amount | Impairment | Treatment Summary |
|---|---|---|---|---|
| 1 | Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9 | $ 1,294,947.51 (per Claim 1; disputed by Debtor) | Impaired | The Allowed Claim(s) in this Class shall be paid in full from the Southshore Property Proceeds with interest from the Petition Date accruing at the rate of the Current Index plus one and 775/1000 percentages points (1.775%). *As of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%.*<br><br>From the Effective Date through the Southshore Closing, Class 1 will receive monthly adequate protection |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 6 of 35

Case 22-31873-thp11    Doc 89    Filed 02/07/23

| Class | Description | Claim Amount | Impairment | Treatment Summary |
|-------|-------------|--------------|------------|-------------------|
| | | | | payments in the amount of the monthly accruing interest (e.g. the Current Index plus one and 775/1000 percentages points (1.775%)) commencing on the Effective Date on the Allowed Claim. *As of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%.*<br><br>The claim(s) in this Class are disputed by the Debtor. |
| 2 | Pans and Law Creditors (as described in Article 2.7). | Approx. $360,546.38 (face value of judgments), plus accrued interest | Impaired | The Allowed Claims in this Class shall be compromised as follows: (1) from the Southshore Property Proceeds, Class 2 shall be paid the total amount of $90,000 plus 1.5% of the final selling price of the Southshore Property. |
| 3 | All other Allowed Secured Creditors (including Red Phoenix Properties, LLC and Clackamas County) | $224,360 | Impaired | The Allowed Claim(s) in this Class shall be paid in full from the Southshore Property Proceeds. |

### B.    Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. Debtor believes that all Claims entitled to priority under §§ 507(a)(1), (4), (5), (6), and (7) of the Code have been satisfied.

### C.    Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 7 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

The following chart identifies the Plan's proposed treatment of Class 9, which contains general unsecured Claims against the Debtor:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 4 | General Unsecured Class | Impaired | The Allowed Claim(s) in this Class shall be paid from the Southshore Property Proceeds to the extent of such proceeds following payment of Administrative Expenses, Priority Tax Claims, and senior Classes (including Classes 1, 2, and 3).<br><br>The Allowed Claims in this Class will be paid not less than the amount required by Section 1129(a)(7), which the Debtor estimates to be $302,162.29 based on the liquidation analysis attached hereto as **Exhibit 1**.<br><br>Payment of any dividend will depend on the amounts of allowed secured, priority (including costs of administration and the Debtor's attorney's fees), and nonpriority unsecured claims. To the extent Class 4 Allowed Claims are entitled to payment, such payment will be paid from the Southshore Property Proceeds with other payments to creditors. |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 1 - Page 8 of 35**
Case 22-31873-thp11    Doc 49    Filed 02/07/23

### D.     Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, the Equity Interest holders are the stockholders. The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Equity Interest Holders | Unimpaired | Equity Interest Holders shall retain such interest in the Debtor post-confirmation in the same manner as such interest was held pre-confirmation. |

### 2.3.     Treatment of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4.     Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

**The Debtor believes that there are no pre-petition Executory Contracts or Unexpired Leases.** The Debtor will be conclusively deemed to have rejected all pre-petition executory contracts and/or unexpired leases not assumed before the date of the order confirming the Plan. Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

### 2.5.     Means for Implementation of the Plan.

The Plan will be performed and implemented through a sale of the Southshore Property in an amount sufficient to perform all of the obligations under the Plan, which include payment to Allowed Secured Claims as described in Article 2.2A and herein, Administrative Expenses, Priority Tax Claims, and payment to Allowed Unsecured Claims as described in Article 2.2C

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 1 - Page 9 of 35**
Case 22-31873-thp11     Doc 89     Filed 02/07/23

and herein in an amount sufficient to satisfy the requirements of Sections 1129(a)(7) and 1191(c).

Following closing of the Southshore Property, after payment of closing costs, including commissions, the remaining proceeds shall be deemed the Southshore Property Proceeds.

Subject to the laws, regulations, and policies governing the escrow agent, the Debtor shall direct that the escrow agent make payment, pursuant to the terms of the Plan, to Holders of Allowed Secured Claims (e.g. Classes 1, 2, and 3) from the Southshore Property Proceeds. To the extent that the escrow agent cannot make payment, pursuant to the terms of the Plan, to Allowed Secured Claims, or any of them, the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor and the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan, to Allowed Secured Claims from the remaining Southshore Property Proceeds.

If the escrow agent can make payment to Allowed Secured Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to make payment to Holders of Administrative Expenses and Priority Tax Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Administrative Expenses and Priority Tax Claims.

If the escrow agent can make payment to Administrative Expenses and Priority Tax Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to make payment to Holders of Allowed Unsecured Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Allowed Unsecured Claims.

Upon payment of Allowed Secured Claims, Administrative Expenses, Priority Tax Claims, and Allowed Unsecured Claims, the escrow agent or Debtor, as applicable, shall disburse the remaining Southshore Property Proceeds to the Debtor.

### 2.6. General Compromise and Settlement of Claims, Interests, and Controversies.

As otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made or treatment provided on account of such Allowed Claim or Interest.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 10 of 35
Case 22-31873-thp11     Doc 89     Filed 02/07/23

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

Except as otherwise provided herein, all treatment of Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against and Interests in the Debtors and their Estates and Causes of Action against other Entities.

### 2.7. <u>Additional Provisions Applicable to Class 2.</u>

Class 2 consists of Holders of Allowed Secured Claims of (a) Gretchen Pan, an individual; Gretchen Pan, as successor in interest to the Elizabeth Steiner Trust; and Xianghua 'Ed' Pan (collectively, the "Pans") and (b) Darrel L. Deem, an individual; Darrel L. Deem, on behalf of his Roth IRA #14459; David G. Law, an individual; David G. Law, on behalf of his Roth IRA #11396; Janine W. Law, an individual; Janine W. Law, on behalf of her Roth IRA #12075; DJ Property Solutions, LLC, a Utah limited liability company; Deem Realty Funding, Inc., a Utah corporation; and Deem Investment Company, a Utah Corporation (collectively, the "Law Creditors").

The Pans and Law Creditors will independently negotiate the division of the payment from the Debtor. This Plan does not affect the validity of the judgments held by the Pans and Law Creditors against those judgment creditors; this Plan only addresses the judgment liens resulting from those judgments as against the Southshore Property. If, for any reason, the Southshore Property is subject to a foreclosure and the Debtor, any affiliate, or any insider exercises such redemption rights as may exist under applicable law, the Debtor, any affiliate, or any insider (including, without limitation, Brilliant Homes, LLC, Ronnie Sapp, and Bradley Baker) shall be bound by the treatment afforded to Class 2.

### 2.8. <u>Injunction.</u>

Effective as of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor or Reorganized Debtor, as applicable, and their respective assets and properties: (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such entities on account of or in connection with or with respect to any such Claims

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 11 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such entities or the property or the estate of such entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests treated, released, or settled pursuant to the Plan.

### 2.9. Default Remedies.

The Debtor shall complete the sale of the Southshore Property on or before November 15, 2023 (the "Sale Date"). If the Debtor fails to complete the sale of the Southshore Property on the Sale Date, if the Debtor has Southshore Property under contract on the Sale Date, the Debtor shall have a further forty-five (45) days to complete the sale of the Southshore Property.

If the Debtor has not completed the sale of the Southshore Property and does not have the Southshore Property under contract for sale on the Sale Date, or, if the Debtor has not completed the sale of the Southshore Property by that date thirty (30) days following the Sale Date, Kenneth Eiler shall, without further notice, be vested with full, exclusive and plenary power to sell the Southshore Property. In the event that Kenneth Eiler is unable or unwilling to serve as Sale Agent, the holder of the Class 1 Allowed Secured Claim shall name the Sale Agent from the then-serving Panels of Chapter 7 Trustees for the District of Oregon and the District of Western Washington. The Sale Agent shall have the power to sell the Southshore Property, free and clear of liens, claims, encumbrances and interests, without interference from Debtor or holders of Claims, or holders of any interest(s) in the Southshore Property, and to execute and deliver deeds, bills of sale, and other transfer instruments necessary to effectuate the transfer of title.

### 2.10. Payments.

The Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

### 2.11. Post-Confirmation Management.

The manager(s) of the Debtor immediately prior to the Effective Date shall serve as the initial manager(s) of the Reorganized Debtor on and after the Effective Date. Each member of the Debtor or Reorganized Debtor, as applicable, shall serve in accordance with applicable non-bankruptcy law and the Debtor's articles of incorporation, as each of the same may be amended from time to time.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 12 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

Ronnie Sapp, Manager – none

## 2.12. <u>Tax Consequences of the Plan.</u>

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: (1) Confirmation of the Plan under § 1191(a) would general a loss of tax attributes and higher income tax liability during the performance of the Plan; (2) Sale of the Southshore Property would result in tax obligations to member(s) of the Debtor; and (3) Debtor is unaware of any tax consequences on Creditors of any discharge, and any tax consequences of receipt of Plan consideration after Confirmation.

## ARTICLE 3
## <u>FEASIBILITY OF PLAN</u>

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

## 3.1. <u>Ability to Initially Fund Plan</u>.

The Debtor had enough cash on hand on the Effective Date of the Plan, or, in the alternative, to the extent that the Debtor fails to have sufficient cash on hand to make the payments required on the Effective Date, the Equity Interest Holders will be required to make such payments on behalf of the Debtor-in-Possession, sufficient to pay all the Claims and expenses that are entitled to be paid following the Effective Date.

## 3.2. <u>Ability to Make Future Plan Payments And Operate Without Further Reorganization</u>.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan. The ability to make future plan payments is based on the refinance and/or sale of the Southshore Property described in Article 2.5.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections**.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 13 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

# ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit 1**.

# ARTICLE 5
## DISCHARGE.

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code;

or

**If the Plan is confirmed under § 1191(b),** therefore, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1)     on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2)     if applicable, of the kind specified in section 523(a) of this title.

# ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.   Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 1 - Page 14 of 35**
Case 22-31873-thp11     Doc 89     Filed 02/07/23

of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. <u>Binding Effect.</u>

If the Amended Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. <u>Severability.</u>

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. <u>Retention of Jurisdiction by the Bankruptcy Court.</u>

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Disputed Claims, including Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. <u>Captions</u>.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Nonwaiver of Rights.</u>

Notwithstanding confirmation of the Plan, Debtor shall retain and does not waive any offsets, counterclaims, or recoupment against any Creditor. Furthermore, confirmation of the Plan shall not divest or otherwise disqualify the Debtor for any discount, forgiveness, or other relief from any Claim provided for in the Plan, including, but not limited to, any forgiveness available pursuant to Section 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), any rules implementing the CARES Act, or any other section of the CARES Act.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 15 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

**6.7.** __Modification of Plan.__

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.8.** __Final Decree.__

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan:

**Exhibit 1 – Liquidation Analysis**
**Exhibit 2 – Claim Summary**
**Exhibit 3 – Available Current and Historical Financial Information**

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 16 of 35
Case 22-31873-thp11     Doc 89     Filed 02/07/23

doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned will be provided separately. Ballots should be mailed to the following address: Vanden Bos & Chapman, LLP, Attn: Colin, 319 SW Washington St., Ste. 520, Portland, OR 97204.  Must be returned pursuant to the Court's **Order Fixing Time for**

Exhibit 1 - Page 17 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

**Filing Acceptances or Rejections of Plan; and Notice of Confirmation Hearing.**

**How Do I Determine When and How Much I Will Be Paid?** In Article 2.2, the Debtor has provided a written summary of what it anticipates each class of creditors will receive under the Plan.

# ARTICLE 9
# DEFINITIONS

9.1.     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

9.2.     **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

9.3.     **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

9.4.     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

9.5.     **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

9.6.     **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

9.7.     **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.8.     **Allowed Secured Claim**: Allowed Secured Claims are claims secured by

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 18 of 35
Case 22-31873-thp11     Doc 89     Filed 02/07/23

property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.** **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.** **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of Oregon.

**9.12.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.** **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which U.S. Outdoor Holding LLC is the Debtor-in-Possession.

**9.15.** **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.** **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.** **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.** **Confirmation Hearing**: The hearing to be held to consider confirmation of the Plan.

**9.19.** **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.20.** **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.21.** **Current Index:** The most recent Index figure available as of the date of

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 19 of 35
Case 22-31873-thp11    Doc 89    Filed 02/07/23

Confirmation.

**9.22.** **Debtor** and **Debtor-in-Possession**: Blue Moon Property Group, LLC, the debtor-in-possession in this Chapter 11 Case.

**9.23.** **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.** **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.** **Effective Date**: 30 Days after entry of the Confirmation Order.

**9.26.** **Enjoined Party**: All entities, as defined in section 101(15) of the Bankruptcy Code, who have held, hold, or may hold Claims or Interests that been released, discharged, or are subject to the provisions of the Plan.

**9.27.** **Equity Interest**: An ownership interest in the Debtor.

**9.28.** **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.29.** **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30.** **Index**: The "Twelve Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

**9.31.** **IRC:** The Internal Revenue Code.

**9.32.** **IRS**: The Internal Revenue Service.

**9.33.** **ODR:** Oregon Department of Revenue.

**9.34.** **Petition Date**: September 4, 2020, the date the chapter 11 petition for relief was filed.

**9.35.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.36.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 20 of 35
Case 22-31873-thp11    Doc 89    Filed 02/04/23

**9.37.**   **Reorganized Debtor**: The Debtor after the Effective Date.

**9.38.**   **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.39.**   **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.40.**   **Trustee**: Amy E. Mitchell, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.41.**   **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: <u>February 7, 2023</u>                    Respectfully submitted;

VANDEN BOS & CHAPMAN, LLP              BLUE MOON PROPERTY GROUP, LLC



By:<u>/s/ Christopher N. Coyle</u>              By:<u>/s/ Ronnie Sapp</u>
    Christopher N. Coyle, OSB #073501          Ronnie Sapp, Manager
    Of Attorneys for Debtor-in-Possession        Debtor-in-Possession

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Exhibit 1 - Page 21 of 35
Case 22-31873-thp11     Doc 89     Filed 02/07/23

All figures are subject to change until reviewed with tax counsel and/or CPA.

## PERSONAL ANALYSIS

### Real Estate

| Title (residence, rental, commercial, etc) | Property Address | Estimated Gross Sales Price/Value | Commission & Closing Costs (est. 7%) Subtotal | Less Liens/ Mortgages | Net to Seller Before Taxes | Basis | Estimated Capital Gain (taxable) | Estimated Capital Gains Tax (24%) | Net to Seller after Taxes & Liens | Available for Creditors |
|---|---|---|---|---|---|---|---|---|---|---|
| Real Property | 3220 Southshore Blvd., Lake Oswego, OR 97034 | 2,290,000.00 | 160,300.00 | 2,129,700.00 | 1,643,657.51 | 486,042.49 | 2,125,657.51 | 4,042.49 | 970.20 | 485,072.29 | 485,072.29 |
| **Subtotal, Equity (if any) in Real Estate** | | 2,290,000.00 | 160,300.00 | 2,129,700.00 | 1,643,657.51 | 486,042.49 | | 4,042.49 | 970.20 | 485,072.29 | 485,072.29 |

### Schedule B - Personal Property

| Title | Owner | Description of Asset | Value | Commission & Closing Costs (est. 7%) | Less Liens/ Mortgages | Net Value | Basis | Estimated Capital Gain (taxable) | Estimated Capital Gains Tax (24%) | Net to Seller after Taxes & Liens | Available for Creditors |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cashier's Check | | Cash and Cash Equivalents | 2,000.00 | | 0.00 | 2,000.00 | 0.00 | | 0.00 | | 2,000.00 |
| **Subtotal, Equity (if any) in Personal Property** | | | $2,000.00 | | $0.00 | $2,000.00 | $0.00 | | $0.00 | | $2,000.00 |

| **TOTALS:** | | | $2,292,000.00 | $160,300.00 | $2,129,700.00 | $1,643,657.51 | $488,042.49 | | $4,042.49 | $970.20 | $485,072.29 | $487,072.29 |

All figures are subject to change until reviewed with tax counsel and/or CPA.

| | | | |
|---|---|---|---|
| **FROM EQUITY IN REAL ESTATE:** | | | $485,072.29 |
| **FROM EQUITY IN PERSONAL PROPERTY:** | | | $2,000.00 |
| **TOTAL EQUITY AVAILABLE FOR CREDITORS** | | | $487,072.29 |
| | | | |
| **LESS ADMINSTRATIVE EXPENSES:** | | | |
| Vanden Bos & Chapman | $30,000.00 | | |
| | | | |
| Estimated Trustee Attorney | | | |
| & Accountant fees/costs | $5,000.00 | | |
| | $35,000.00 | | ($35,000.00) |
| | | | |
| **LESS CHAPTER 7 TRUSTEE FEES:** | | | |
| **Calculation for Trustee's Commission** | | | |
| Sale Price of Real | | | |
| Property (Less | | | |
| Exemption) | $2,290,000.00 | | |
| Sale Price of Personal | | | |
| Property (Less | | | |
| Exemption) | $2,000.00 | | |
| Subtotal: | $2,292,000.00 | | |
| | | | |
| 25% - First $5,000 | $1,250.00 | | |
| 10% - $5,000 - $50,000 | $4,500.00 | | |
| 5% - $50,000 - $1,000,000 | $112,100.00 | | |
| 3% over $1,000,000 | $38,760.00 | | |
| Total | $156,610.00 | | ($156,610.00) |
| | | | |
| **Subtotal, Available for Creditors** | | | $295,462.29 |
| | | | |
| **LESS PRIORITY CLAIMS:** | | | $6,700.00 |
| | | | |
| **LESS SECURED CLAIMS:** | | | $0.00 |
| | | | |
| **TOTAL AVAILABLE FOR UNSECUREDS:** | | | $302,162.29 |

CLAIMS ANALYSIS

| Class # | Claim # | Creditor Name | Amt. Owed Per Schedule F | Amt. Owed Per Claim | Difference | Allowed Amount |
|---|---|---|---|---|---|---|
| **SECURED** | | | | | | |
| 1 | 1 | Deutsche Bank National Trust | $ 1,169,156.00 | $ 1,294,947.51 | $ (125,791.51) | $ 1,294,947.51 |
| 2 | | Pans & Law Creditors | $ 124,350.00 | $ - | $ 124,350.00 | $ 124,350.00 |
| 3 | | Red Phoenix Properties, LLC | $ 210,000.00 | | $ 210,000.00 | $ 210,000.00 |
| | | | | | | $ 1,629,297.51 |
| | | | | | | |
| **PRIORITY** | | | | | | |
| | | ODR | $ - | $ - | $ - | $ - |
| | | IRS | $ - | $ - | $ - | $ - |
| | 3 | Annika Eriksson (Priority) | $ - | $ 3,350.00 | $ (3,350.00) | $ 3,350.00 |
| | 4 | Donald Buckhout | $ - | $ 3,350.00 | $ (3,350.00) | $ 3,350.00 |
| | | | | | | $ 6,700.00 |
| | | | | | | |
| **GENERAL UNSECURED** | | | | | | |
| 4 | 3 | Annika Eriksson (Non-Priority) | | $ 159.50 | $ (159.50) | $ 159.50 |
| 4 | 2 | Lake Oswego Corporation | | $ 92,766.20 | $ (92,766.20) | $ 92,766.20 |
| 4 | 4 | Donald Buckhout | | $ 159.50 | $ (159.50) | $ 159.50 |
| 4 | | Brilliant Homes, LLC | $ 480,000.00 | | $ 480,000.00 | $ 480,000.00 |
| 4 | | Brilliant Homes, LLC | $ 2,000.00 | | $ 2,000.00 | $ 2,000.00 |
| | | **Subtotal Class 4** | | | | $ 575,085.20 |

This Claims Analysis lists scheduled and filed claims. Listing of scheduled and filed claims is without prejudice to Debtor or another party in interest disputing such claim(s).

Debtor Name __Blue Moon Property Group, LLC__

United States Bankruptcy Court for the: District of Oregon

Case number: __22-31873-thp11__

☐ Check if this is an amended filing

## Official Form 425C

# Monthly Operating Report for Small Business Under Chapter 11    12/17

Month: __Dec 2022__

Line of business: __Real Estate__

Date report filed: __01/23/2023__
MM / DD / YYYY

NAISC code: __531390__

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: __Ronald G. Sapp__

Original signature of responsible party __/s/ Ronald G. Sapp__

Printed name of responsible party __Ronald G. Sapp__

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

17. Have you paid any bills you owed before you filed bankruptcy?  ❑ ☑ ❑

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ❑ ☑ ❑

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____ 0.00

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ _____ 0.00

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    – $ _____ 0.00

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ _____ 0.00

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $ _____ 0.00

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**  $ _____ 0.00

    *(Exhibit E)*

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                                          $ _____ 0.00

     *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                          _____ 0

27. What is the number of employees as of the date of this monthly report?                            _____ 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $ _____ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ _____ 0.00

30. How much have you paid this month in other professional fees?                                     $ _____ 0.00

31. How much have you paid in total other professional fees since filing the case?                    $ _____ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | – | Column B | = | Column C |
|---|---|---|---|---|---|
|  | **Projected** | | **Actual** | | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ ____ 0.00 | – | $ ____ 0.00 | = | $ ____ 0.00 |
| 33. **Cash disbursements** | $ ____ 0.00 | – | $ ____ 0.00 | = | $ ____ 0.00 |
| 34. **Net cash flow** | $ ____ 0.00 | – | $ ____ 0.00 | = | $ ____ 0.00 |

35. Total projected cash receipts for the next month:                                                  $ _____ 0.00

36. Total projected cash disbursements for the next month:                                          - $ _____ 0.00

37. Total projected net cash flow for the next month:                                                = $ _____ 0.00

Exhibit 1 - Page 27 of 35
Case 22-31873-thp11     Doc 49     Filed 02/23/23

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐   38.   Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐   39.   Bank reconciliation reports for each account.

☐   40.   Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐   41.   Budget, projection, or forecast reports.

☐   42.   Project, job costing, or work-in-progress reports.

**Monthly Operating Report for Small Business Under Chapter 11**

**Exhibit A**

*Not applicable.*

**Exhibit B**

*Not applicable.*

**Exhibit C**

*See attached.*

**Exhibit D**

*Not applicable; no disbursements in the reporting period.*

**Exhibit E**

*Not applicable.*

**Exhibit F**

*Not applicable.*

| Date | Amount |
|------|--------|
| 12/5/2022 | $ 500.00 |

# Initiate Business Checking℠



BLUE MOON PROPERTY GROUP, LLC
DEBTOR IN POSSESSION
CH 11 CASE #22-31873 (MOR)
17600 PACIFIC HWY UNIT 338
MARYLHURST OR 97036-0801

## Questions?

Available by phone Mon–Sat 7:00am–11:00pm
Eastern Time, Sun 9:00am–10:00pm Eastern Time:
We accept all relay calls, including 711
**1-800-CALL-WELLS** (1-800-225-5935)

En español 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (115)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargo.com/digitalbusinessresources to explore tours, articles,
infographics, and other resources on the topics of money movement, account
management and monitoring, security and fraud prevention, and more.

## Account options

A check mark in the box indicates you have these
convenient services with your account(s). Go to
wellsfargo.com/biz or call the number above if you have
questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☑ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 12/5 | $0.00 |
| Deposits/Credits | 500.00 |
| Withdrawals/Debits | - 0.00 |
| **Ending balance on 12/31** | **$500.00** |

Account number ▮▮▮▮4433
BLUE MOON PROPERTY GROUP, LLC
DEBTOR IN POSSESSION
CH 11 CASE #22-31873 (MOR)

Oregon account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): 123006800

For Wire Transfers use
Routing Number (RTN): 121000248

## Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility
requirements please call the number listed on your statement or visit your Wells Fargo branch.



## Transaction history

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|----------|-------------|---------|
| 12/5 | | Etransfer IN Branch/Store - From Checking 19181 Willamette Dr West Linn OR 0771 | 500.00 | | 500.00 |
| Ending balance on 12/31 | | | | | 500.00 |
| **Totals** | | | **$500.00** | **$0.00** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

## Monthly service fee summary

For a complete list of fees and detailed account information, see the disclosures applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 12/05/2022 - 12/31/2022 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. Your fee waiver is about to expire. You will need to meet one of the requirements to avoid the monthly service fee.

| How to avoid the monthly service fee Have any ONE of the following account requirements | Minimum required | This fee period |
|---|---|---|
| • Average ledger balance | $1,000.00 | $500.00 ☐ |
| • Minimum daily balance | $500.00 | $500.00 ☑ |

*The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.*
EDEI

## Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess unit ($) | Total service charge ($) |
|---|---|---|---|---|---|
| Cash Deposited ($) | 0 | 5,000 | 0 | 0.0030 | 0.00 |
| Transactions | 0 | 100 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

# ☑ IMPORTANT ACCOUNT INFORMATION



**ATM Check Deposit Limit**

Effective March 15, 2023, we are changing the following paragraph in the "Our right to decline deposits" subsection within the "Depositing Funds" section of the Deposit Account Agreement:

We may decline all or part of a deposit, including cash, for any reason. This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion.

The new paragraph is as follows:

We may decline all or part of a deposit, including cash, for any reason. This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion. There are limits on the total dollar amount of checks that can be deposited at Wells Fargo ATMs per transaction. We may decline check deposits that exceed $1 million.

Effective January 31, 2023, in the section of your Deposit Account Agreement ("Agreement") titled "Available Balance, Posting Transactions, and Overdraft", under the subsection "How we process and post transactions to your account", the section titled "Step 2: we sort your transactions into categories" is deleted and replaced with the following:

Step 2: we sort your transactions into categories

- We credit deposits received before the cutoff time

- We subtract withdrawals and payments we have previously authorized that we cannot return unpaid such as debit card purchases, ATM withdrawals, account transfers, Bill Pay transactions, and teller-cashed checks. Transactions are generally sorted by date and time the transaction was conducted or, for some transactions, the day we receive it for payment, or the time assigned by our system. If date and time are the same, we post from lowest to highest dollar amount.

- We pay your checks and preauthorized ACH payments, such as electronic payments you have authorized a company to withdraw using your account and routing number. Transactions are generally sorted by date and time received by the Bank, and if date and time are the same, we post from lowest to highest dollar amount. Merchant-issued payment card transactions (e.g., an ACH payment associated with a purchase you made using a store-issued debit card) post after all other transactions in this category.

Determining Date and Time

- Cutoff time is based on the location where the deposit or transfer was made.

- For debit card transactions, if we do not have date and time information, we use the day we receive it for payment from the merchant.

- For some transactions, such as Bill Pay or teller-cashed checks, a different time may be assigned by our systems.

NEW YORK CITY CUSTOMERS ONLY -- Pursuant to New York City regulations, we request that you contact us at 1-800-TO WELLS (1-800-869-3557) to share your language preference.

Tax Season Reminder: Wells Fargo delivers tax documents - either by mail or online depending on your delivery preference - no later than January 31 or by the IRS deadline of February 15 for brokerage accounts. Depending on the U.S. Postal delivery service,



you should expect to receive your tax documents no later than the end of February. You can update your tax document delivery preferences by visiting Wells Fargo Online®.

The Internal Revenue Service (IRS) requires Wells Fargo to report information regarding the amount of interest, dividend or miscellaneous income earned as well as gross proceeds from sales by providing you with various IRS Forms 1099 based on the different types of transactions that occurred in your account during the calendar tax year (the IRS reportable threshold). For example, if you have interest or dividends in the amount of $10 or more during that timeframe, you will receive a Form 1099-INT from Wells Fargo.

For more information, visit Wells Fargo Tax Center at https://www.wellsfargo.com/tax-center/.

Other Wells Fargo Benefits

Shopping online this Holiday Season? Avoid scams by watching for red flags like pressure to buy right away, rude or pushy language, or unusually specific ways to pay such as gift cards, crypto or payment apps. Learn more at www.wellsfargo.com/security.



## Important Information You Should Know

•  To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts. Wells Fargo Bank, N.A. may furnish information about deposit accounts to consumer reporting agencies. You have the right to dispute the accuracy of information that we have furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

•  In case of errors or questions about other transactions (that are not electronic transfers): Promptly review your account statement within 30 days after we made it available to you, and notify us of any errors.

•  If your account has a negative balance: Please note that an account overdraft that is not resolved 60 days from the date the account first became overdrawn will result in closure and charge-off of your account. In this event, it is important that you make arrangements to redirect recurring deposits and payments to another account. The closure will be reported to Early Warning Services. We reserve the right to close and/or charge-off your account at an earlier date, as permitted by law. The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**

A. The ending balance
shown on your statement . . . . . . . . . . . . . . . . . . . $ _____

**ADD**

B. Any deposits listed in your           $ _____
register or transfers into              $ _____
your account which are not          $ _____
shown on your statement.           + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**

C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | Total amount $ |

©2021 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 22-31873-thp11 |
| Blue Moon Property Group, LLC | ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER |
| Debtor-in-Possession. | |

THIS MATTER, having come before the Court on Debtor-in-Possession Blue Moon

Property Group, LLC's ("Debtor") Notice of Intent to Sell Real or Personal Property,

Compensate Real Estate Broker, and/or Pay Any Secured Creditor's Fee and Costs; Motion

for Authority to Sell Property Free and Clear of Liens; and Notice of Hearing (Docket #54)

(the "Sale Motion"); notice of the Sale Motion having been given pursuant to Bankruptcy

Rules 2002(a) and 9019 and LBRs 2002-1 and 9019-1; the Court having heard the matter

on April 4, 2023 and all relevant pleadings, exhibits, and documents of record in this case;

Page 1 of 12     ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY
FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE
BROKER

**Exhibit 2 - Page 1 of 12**
Case 22-31873-thp11     Doc 89     Filed 04/14/23

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**THE COURT FINDS:**

A.      The Debtor provided proper, timely, adequate, and sufficient notice of the Sale Motion, the hearing on the Sale Motion, the transaction(s) contemplated under the Sale Motion in accordance Sections 363, 365 and Rules 2002, 6004, 6006, 9014 and 9019 to (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) all entities known to have asserted any interests in or upon the assets described in the Sale Motion; (iv) all federal state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Sale Motion, and (v) the official service list in this case. Such notice was good and sufficient, and afford parties sent notice a reasonable opportunity to object or be heard with respect to the matters that the subject of this Order, and no other or further notice is required.

B.      The purchaser of the Property (as defined in the Sale Motion at ¶ 3) is Boones & Kruse Limited Partnership (the "Purchaser").

C.      Debtor, in ascertaining whether the proposed purchase price constituted the "highest and/or best offer" for the Property, determined, in its best business judgment, that the proposed gross sale price offered by the Purchaser represents the highest and best offer for the Property. No other person, entity, or group of entities has offered to purchase the Property for greater economic or other value to Debtor. The Debtor asserts that it marketed its assets and conducted the sale process in full compliance with the Sale Motion and applicable law and rules.

D.      The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue of this case and the Sale Motion in this District is proper under 28

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 2 - Page 2 of 12**

U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Sale Motion are 11 U.S.C. §§ 363 and 365, and Fed. R. Bankr. P. 2002, 6004, 6006, 9014 and 9019.

E.    Approval of the transaction described by the Sale Motion at this time is in the best interests of the Debtor, its creditors, its estate, and other parties in interest.

F.    The Debtor has demonstrated both (i) good, sufficient, and sound business purpose and justification, and (ii) compelling circumstances for the sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization. The Debtor diligently and in good faith marketed the Property to secure the highest and best offer therefore.

G.    Debtor asserts that the Sale Motion was entered into by the Debtor and Purchaser without collusion or fraud, in good faith, and from arm's-length bargaining positions.

H.    The transfer of the Property to Purchaser will be a legal, valid, and effective transfer of the Property, will vest Purchaser with all right, title, and interest of the Debtor to the Property free and clear of all interests in such property of a person or entity other than the Debtor of (i) all liens of any kind or nature whatsoever arising under or out of, or in connection with, or in any way relating to the operation of the Debtor's business prior to the closing, or any acts of the Debtor, and (ii) all claims as defined in 11 U.S.C. § 101(5) (collectively, "Interests").

**NOW, THEREFORE, it is ORDERED as follows:**

1.    The Sale Motion is granted, as further described herein and pursuant to the terms and conditions of this Order.

2.    The Residential Real Estate Sale Agreement attached to the Sale Motion as Exhibit 2 (the "Residential Real Estate Sale Agreement") and all of the terms and conditions

Page 3 of 12      ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

**Exhibit 2 - Page 3 of 12**

Case 22-31873-thp11      Doc 89      Filed 04/14/23

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

thereof are hereby approved in all respects, except for those provisions related to the payment of commission(s) to Avery Bunick Luxury Properties. The failure specifically to include any particular provision of the Sale Motion or the Residential Real Estate Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Motion and/or the Residential Real Estate Sale Agreement be authorized and approved in its entirety. Pursuant to 11 U.S.C. §§ 363 and 365, the Debtor is authorized and directed to consummate the sale, pursuant to and in accordance with the terms and conditions of the Sale Motion, the Residential Real Estate Sale Agreement, and this Order (collectively, the "Sale Agreement").

3.      The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Sale Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement, and to take all further actions as may be reasonably requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser or reducing to its possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Agreement.

4.      As of the closing, the Debtor and each of the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release the Debtor's or such creditor's Interests in the Property, if any, as such Interests may have been recorded or may otherwise exist.

5.      Except as otherwise provided in this Order, pursuant to 11 U.S.C. § 363(f), the Property shall be transferred at closing to Purchaser, or its assigns, free and clear of all

Page 4 of 12          ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY
                      FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE
                      BROKER

**Exhibit 2 - Page 4 of 12**
                      Case 22-31873-thp11    Doc 89    Filed 04/14/23

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

claims or Interests with all such claims or Interests to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Property, and subject to any claims and defenses the Debtor may possess with respect thereto.

6.    The proceeds from sale shall be distributed as follows:

a.    To the customary and ordinary closing costs, consisting of escrow charges and title charges excepting therefrom commission(s) payable to Avery Bunick Luxury Properties;

b.    To the Client Trust Account of Vanden Bos & Chapman, LLP or to be held by the title company handling the sale of the Property in the amount of the commission(s) payable to Avery Bunick Luxury Properties to fund the "Administrative Claim Hold." The Debtor shall maintain the Administrative Claim Hold until such time as this Court issues an order that resolves all issues presented by the administrative claim of Avery Bunick Luxury Properties and such order is an order (i) that has not been reversed, stayed, modified, or amended; (ii) as to which no appeal, certiorari proceeding, reargument, or other review or rehearing has been requested or is still pending; and (iii) as to which the time for filing a notice of appeal, petition for certiorari, or request for reargument or further review or rehearing shall have expired (the "Final Order"). Until entry of the Final Order, the Administrative Claim Hold shall be held free and clear of all liens, claims, encumbrances, and interests, and shall be held for the exclusive purpose of funding the amount needed to satisfy the claim of Avery Bunick Luxury Properties, if allowed, up to the amount that Avery Bunick Luxury Properties asserts is due and owing to Avery Bunick Luxury Properties.

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

c. To Clackamas County in the amount required by any payoff quote;

d. To Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass- Through Certificates, Series 2006-9 ("Deutsche Bank") in the approximate amount of $1,210,855.08 (as of 3/31/2023) that shall continue to accrue interest at the pre-foreclosure judgment contractual terms of the Loan (e.g. the rate of the Current Index plus one and 775/1000 percentages points (1.775%); as of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%), plus such other amounts as necessary, per the terms of the Stipulation Re: Non-Material Modification To Debtor's Sub V Chapter 11 Plan And Treatment Of Claim ("Claim Stipulation")  in full satisfaction of the claim(s) and subject to the terms of the Claim Stipulation between Debtor and Deutsche Bank;

e. To the Pans and Law Creditors (as defined in Paragraph 1 of the Sale Motion") in the amount of $120,000 in full satisfaction of the claim(s) and subject to the terms of the Settlement between Debtor and the Pans and Law Creditors;

f. To Red Phoenix Properties, LLC in the amount required by the payoff quote with respect to the Deed of Trust in the amount of $60,000;

g. To the Client Trust Account of Vanden Bos & Chapman, LLP or to be held by the title company handling the sale of the Property in the amount of $105,149.79 to fund the Reserve (defined below) pending resolution of the Debtor's claim objection to the claim of the Lake Oswego Corporation ("LOC"), as further described in Part 9 of this Order;

Page 6 of 12        ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY
FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE
BROKER

**Exhibit 2 - Page 6 of 12**
Case 22-31873-thp11    Doc 89    Filed 04/14/23

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

h.     To the Debtor (provided, however, that such funds are held segregated and in trust pending both (a) confirmation that replacement collateral has been provided to Red Phoenix Properties, LLC, and (b) confirmation of Debtor's Chapter 11, Subchapter V, Plan (Dated: 02/07/2023) (Docket #45) or such further order of the Court as appropriate.

7.     In order to resolve the objection of LOC to the Sale Motion, the sale of the Property and distributions of funds at closing are conditioned upon the following:

a.     Notwithstanding anything to the contrary in this Order or the Order Confirming Plan (collectively, the "Orders"), except as is necessary to effectuate the sale of the Property and confirmation of the Plan, the Court is not ruling at this time on any of the issues raised in LOC's Omnibus Objection to (A) Debtor's Motion for Authority to Sell Property Free and Clear of Liens, and (B) Debtor's Chapter 11 Subchapter V Plan Dated February 7, 2023 (Docket #58) (the "LOC Objection"). On account of the LOC Objection, the Debtor shall reserve the sum of $105,149.79 (the "Reserve"), which amount represents the total amount that LOC asserts is due and owing to LOC is due and owing as of March 23, 2023 (the "Record Date").  The Reserve shall be held in the Client Trust Account of Vanden Bos & Chapman, LLP or the title company handling the sale of the Property until further order of this Court.

b.     Entry of the Orders shall in no way affect and shall be without prejudice to the LOC Objection, the Claim Objection filed by the Debtor with respect to LOC (Docket #63) (the "Claim Objection") and the issues raised therein, which issues include without limitation (i) LOC's position that the sale of the Property is not free and clear of LOC's asserted right to restrict and deny the Lake Privileges (as

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 2 - Page 7 of 12**

Case 22-31873-thp11     Doc 89     Filed 04/14/23

described in the LOC Objection) associated with the Property unless and until all assessments (together with any and all finance charges, transfer fees, and attorney's fees) attributable to the Property as of the Record Date are paid in full, and (ii) the Debtor's asserted position that LOC's assessments do not run with the land and that certain of the amounts claimed by LOC are unenforceable as a matter of law or should be disallowed under the facts of this case. Nothing in the Orders is intended to prejudice either LOC or the Debtor in connection with the LOC Objection or the Claim Objection, and all of LOC's and the Debtor's rights, claims, and defenses are expressly reserved.

      c.     The Debtor shall be responsible for payment of all assessments, if any, accruing after the Record Date until such time as closing of the sale occurs (the "Closing"). All assessments accruing after Closing shall be the responsibility of the buyer of the Property. The Debtor shall maintain the Reserve until such time as this Court issues an order that resolves all issues presented by the LOC Objection and the Claim Objection and such order is an order (i) that has not been reversed, stayed, modified, or amended; (ii) as to which no appeal, certiorari proceeding, reargument, or other review or rehearing has been requested or is still pending; and (iii) as to which the time for filing a notice of appeal, petition for certiorari, or request for reargument or further review or rehearing shall have expired (the "Final Order"). Until entry of the Final Order, the Reserve shall be held free and clear of all liens, claims, encumbrances, and interests, and shall be held for the exclusive purpose of funding the amount needed to satisfy the claim of LOC up to the amount that LOC asserts is due and owing to LOC as of the Record Date. Notwithstanding the foregoing and

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

subject to the requirement that the Debtor maintains the Reserve until entry of the Final Order, LOC agrees that it will not erect a fence or otherwise block lake access, including denial of any permit or similar authorization to the buyer of the Property from the Debtor, on account of any unpaid assessments due and owing prior to the Record Date.

8. Pursuant to Bankruptcy Rule 6004(h), this Order is immediately effective upon entry and is not stayed, and the closing on the sale of the Property is authorized to take place immediately upon entry of this Order.

9. Except as expressly permitted, contractually assumed, or otherwise specifically provided by the Sale Agreement, all persons and entities holding claims and/or Interests against or in the Debtor or the Property, including but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, landlords, trade, unsecured creditors, and other creditors (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) in any way relating to the Debtor, the Property, the operation of the business of the Debtor prior to the closing, or the transfer of the Property to Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Interests against or in the Debtor or the Property against Purchaser, its successors or assigns, its property or interests or the Property.

10. All persons that are presently, or on the closing date may be, in possession of some or all of the Property are directed to surrender possession of the Property to Purchaser or as otherwise directed by Purchaser, with the claims or Interests of such person to be satisfied solely from the proceeds of the sale.

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 2 - Page 9 of 12**

11.     Purchaser shall not be liable or responsible for any liability or other obligation of the Debtor arising under or related to the Property, except as expressly provided for in the Sale Agreement or in this Order. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Sale Agreement, Purchaser shall not be liable for any claims or Interests against the Debtor of any of its predecessors or affiliates, or as the transferee of the Property, and Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the closing, now existing or hereafter arising or accruing, whether fixed or contingent, with respect to the Debtor of any obligations of the Debtor or any claims or Interests against the Debtor arising prior to the closing, including, without limitation, liabilities resulting from or relating to (i) errors or omissions claims, (ii) taxes, in either case, arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business or the sale of the Property, or (iii) claims related to injunctive relief or for the posting of a bond or other security.

12.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreement.

13.     The consideration provided by Purchaser is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or any other applicable law or otherwise.

14.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Sale Agreement, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

**Exhibit 2 - Page 10 of 12**

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 22-31873-thp11     Doc 89     Filed 04/14/23

(a) compel delivery of the Property to the Purchaser, (b) resolve any disputes arising under or related to the Sale Agreement, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect Purchaser against (i) any of the liabilities not expressly assumed and assigned, or (ii) any Interests in the Debtor or the Property, of any kind or nature whatsoever, attaching to the proceeds of the sale.

15.     The terms and provisions of the Sale Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors, Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Property to be sold to Purchaser pursuant to the Sale Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. In no circumstance shall the Sale Agreement be subject to rejection or avoidance.

16.     Neither the Debtor nor Purchaser is required to make any filing with or give any notice to, or to obtain any approval, consent, ratification, permission, waiver or authorization from, any person or any governmental authority in connection with the execution and delivery of the Sale Agreement of the consummation of the transactions contemplated therein (other than with respect to governmental licenses which do not constitute Property), and the Debtor does not need to seek or obtain member consent to consummate the transactions contemplated by the Sale Agreement.

###

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 9704-2690
(503) 241-4869

**Exhibit 2 - Page 11 of 12**

**PRESENTED BY**:

VANDEN BOS & CHAPMAN, LLP


By:/s/ Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Christopher N. Coyle, OSB #073501
    Of Attorneys for Debtor-in-Possession


## LBR 9021-1 CERTIFICATION

I certify that I have complied with the requirement of LBR 9021-1(a); the form of order was circulated prior to the hearing to the following parties: (1) counsel for Deutsche Bank; (2) counsel for the Pans and Law Creditors; (3) counsel for the Lake Oswego Corporation; (4) the Subchapter V Trustee; and (5) counsel for the United States Trustee.


By:/s/ Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Christopher N. Coyle, OSB #073501
    Of Attorneys for Debtor-in-Possession

**First Class Mail:**

Blue Moon Property Group, LLC
Attn: Ronald Sapp
17600 Pacific Hwy Unit 338
Marylhurst, OR 97036

**Electronic Mail:**

The foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system.

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**Exhibit 2 - Page 12 of 12**

1  JESSE A.P. BAKER (OSB No.100017)
   **ALDRIDGE PITE, LLP**
   The Ogden Building
2  9311 SE 36th St, Ste 207
   Mercer Island, WA 98040
3  Telephone: (425) 644-6471

4  Mailing Address:
   8880 Rio San Diego Drive, Suite 725
5  San Diego, CA 92108
   Telephone: (858) 750-7600
6  Facsimile: (619) 326-2430

7  Attorneys for Creditor:
   Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust
8  Mortgage Loan Pass-Through Certificates, Series 2006-9

9
                    **UNITED STATES BANKRUPTCY COURT**
10
                         **DISTRICT OF OREGON**
11

12 | In re | Case No: 22-31873-THP |

13 | | Chapter 11 (Sub V) |
   BLUE MOON PROPERTY GROUP, LLC,
14 | | **STIPULATION RE: NON-MATERIAL** |
   | | **MODIFICATION TO DEBTOR'S SUB V** |
15 |    Debtor. | **CHAPTER 11 PLAN AND** |
   | | **TREATMENT OF CLAIM** |
16
   | | **Class 1** |
17
   | | <u>**SUBJECT PROPERTY**</u>: |
18 | | 3220 Southshore Blvd |
   | | Lake Oswego, Oregon 97034 |
19
   | | <u>**Confirmation Hearing:**</u> |
20 | | **Date:**  April 4, 2023 |
   | | **Time:**  9:00am |
21 | | **Judge:**  Hon. Thomas M. Renn |

22

23        Secured Creditor, Deutsche Bank National Trust Company, as Trustee for HarborView

24 Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9; Nationstar

25 Mortgage LLC as servicer (collectively hereinafter "<u>Creditor</u>"), and Debtor, Blue Moon Property

26 Group, LLC (hereinafter "<u>Debtor</u>"), by and through their respective counsel of record hereby enter

27 into this Stipulation Re: Non-Material Modification to Debtor's Sub V Chapter 11 Plan and

28 Treatment of Creditor's Class 1 Secured Claim ("<u>Stipulation</u>"):

- 1 -

**Exhibit 3 - Page 1 of 7**
Case 22-31873-thp11   Doc 89   Filed 04/04/23

## I.  RECITALS

*Creditor's Claim:*

On August 31, 2006, Brett E. Olivas ("Borrower") executed a promissory note in the principal sum of $636,750.00 (the "Note"), which was made payable to Countrywide Bank, N.A. ("Lender").  (*See,* Proof of Claim No: 1-1).

The Note is secured by a first position deed of trust (the "Deed of Trust") encumbering the real property located at 3220 Southshore Blvd, Lake Oswego, Oregon 97034 ("Property").  (*See,* Proof of Claim No: 1-1).  The Note and Deed of Trust may be referred to collectively herein as the "Loan."

Subsequently, all of the Lender's beneficial interest in the Loan was transferred and/or assigned to Creditor. ").  (*See,* Proof of Claim No: 1-1).

On or about August 29, 2008, Borrower transferred his interest in the Property initially to Clunas Funding Group, Inc; however, the Property was thereafter transferred again multiples times to Renx Group, LLC.

On or about May 30, 2018, a General Judgment of Foreclosure and Sale was entered in the Circuit Court of the State of Oregon in favor of the Creditor.  (*See*, Proof of Claim No.1-1).

Upon information and belief, on or about October 10, 2021, the Property was transferred from Renx Group, LLC to Brilliant Homes, LLC.

Upon information and belief, on or about November 9, 2022, the Property was transferred to the Debtor.

*The Bankruptcy Proceedings:*

On November 9, 2022, Debtor filed the instant bankruptcy petition under Subchapter V of Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Oregon and assigned Case No. 22-31873-THP-11.

Creditor filed a Proof of Claim against the Debtor's estate for $1,294,947.51, secured by the Property.  (*See,* Proof of Claim No: 1-1).

On February 7, 2023, Debtor filed its Subchapter V Chapter 11 Plan of Reorganization ("Plan").  *(See, Dkt. No.45)*.  Creditor's Claim is the Class 1 Impaired Secured Claim.  Debtor disputes the Claim in the Plan.  The Plan provides Allowed Claim(s) in this Class shall be paid in

**Exhibit 3 - Page 2 of 7**

- 2 -

Case 22-31873-thp11    Doc 89    Filed 04/04/23

full from the Southshore Property Proceeds with interest from the *Petition Date* accruing at the rate of the Current Index plus one and 775/1000 percentages points (1.775%). As of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%. From the Effective Date through the Southshore Closing, Class 1 will receive monthly adequate protection payments in the amount of the monthly accruing interest (e.g. the Current Index plus one and 775/1000 percentages points (1.775%)) commencing on the Effective Date on the Allowed Claim. As of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%. (*See*, Dkt. No.45). The sale of the Property is to be completed on or by November 15, 2023, plus additional 45 days provided the Property is under contract.

On March 10, 2023, Debtor filed a Motion to Sell the Property Free and Clear of Liens pursuant to a private sale for a gross purchase price of $2,000,000.00 ("Motion to Sell"). (*See*, Dkt. No.51).

On March 10, 2023, the Debtor also filed a Motion to Approve Settlement with respect to various claims, including Creditor ("Settlement Motion")   (*See,* Dkt. No.55).  The Settlement Motion asserts that respect to Creditor there is an accounting dispute of approximately $200,000 with respect to its Claim, and pursuant to the terms discussed between the parties, Debtor proposes to pay $1,202,566.50 (plus accrued interest from Feb. 1, 2023 to date of closing) in full satisfaction of the Claim(s). (*Id.*)  The Motion does not clarify what the interest rate is, or other terms related to the treatment of Creditor's claim or even that these terms would apply for the Plan.

The purpose of this Stipulation is to firm up, and more appropriately set forth the treatment of Creditor's Claim for Debtor's Plan, which in turn will be incorporated into any Order on the Debtor's Motion to Sell and Settlement Motion.

**THE PARTIES STIPULATE AS FOLLOWS**:

1.    Creditor (its successors or assigns) shall have an allowed fully secured claim currently in  the amount of $1,210,855.08 (as of 3/31/2023) that shall continue to accrue interest at the pre-foreclosure judgment contractual terms of the Loan (e.g. the rate of the Current Index plus one and 775/1000 percentages points (1.775%); as of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%) solely for the Sale Period set forth herein (the "Secured Claim").  The Creditor's Secured Claim, as defined in this paragraph, is

**Exhibit 3 - Page 3 of 7**
- 3 -
Case 22-31873-thp11   Doc 89   Filed 04/04/23

a stipulated resolution of the Claim, shall be the Creditor's Allowed Claim (as that term is used in the Plan), is not subject to dispute by Debtor or Creditor, and represents a complete payoff with respect to the Secured Claim.

2. <u>Adequate Protection Payments Pending Sale of the Property</u>.  Until Debtor completes a sale of the Property, or the end of the Sale Period (defined as the period by which the Debtor shall complete a sale of the Property as described in Plan Section 2.9), whichever occurs first, Debtor shall tender adequate protection payments in the amount of $1,329.59 on the first day of each month commencing May 1, 2023 and continuing on the first day of each month thereafter until the Property is sold and Creditor's Secured Claim is paid in full through escrow in accordance with its Allowed Claim as required herein, or expiration of the Sale Period.  After expiration of the Sale Period; however, Creditor has no further obligation to accept the adequate protection payments.

3. <u>Payment of Property Taxes, Insurance, and HOA Dues</u>.  During the Sale Period, Debtor is required to obtain and maintain real property insurance for the Property (including flood insurance), and timely pay all property taxes and Homeowners' Association ("<u>HOA</u>") dues for the Property during the Sale Period.  Debtor shall provide Creditor's counsel with proof of such insurance listing Creditor as an additional loss payee/Mortgagee within 5 business days of executing this Stipulation.   In the event Debtor fails to maintain insurance, or timely pay property taxes and/or HOA dues as required hereunder, then Creditor (and/or its servicer) may obtain insurance and/or pay property taxes for the Property, which may be added to the Secured Claim. Creditor reserves the right to require the Debtor to tender monthly escrow payments to reimburse Creditor (and/or its servicer) for any and all insurance and/or property tax advances made by Creditor (and/or its servicer) for the Property after the Sale Period.

4. <u>Post-Confirmation, Pre Sale Default</u>:  In the event of any default on any of the provisions of this Stipulation prior to expiration of the Sale Period, Creditor (and/or its servicer) shall provide written notice, via certified mail, to Debtor at 17600 Pacific Hwy Unit 338, Marylhurst, OR 97036 and to Debtor's attorney of record, indicating the nature of default.  If Debtor fails to cure the default within the passage of thirty (30) calendar days from the date said written notice is placed in the mail, then Movant may file an Ex Parte Declaration of Non-Cure

**Exhibit 3 - Page 4 of 7**

- 4 -

Case 22-31873-thp11    Doc 89    Filed 04/04/23

1 and an Order Terminating the Automatic Stay with the court. Upon entry of said Order Terminating

2 the Automatic Stay, the automatic stay shall be immediately terminated as to Movant, and Movant

3 may proceed to complete its judicial foreclosure sale of the Property pursuant to applicable state

4 law without further order or proceeding of this Court.

5        5.    Any forbearance by Creditor (and/or its servicer) in exercising any right or remedy,

6 including, without limitation, Creditor (and/or its servicer) accepting payments from third persons,

7 entities or successors in interest to Debtor, or in amounts less than the amount due, including as

8 provided for under this Stipulation, shall not be a waiver of or preclude the Creditor's (and/or

9 servicer) exercise of any right or remedy, or act as a waiver of Creditor's right to proceed hereunder

10 or under the Loan.

11        6.    Except as otherwise expressly provided for herein, all remaining terms of the Note

12 and Deed of Trust, which are incorporated herein by this reference, shall govern the treatment of

13 Creditor's Secured Claim during the Sale Period. Upon expiration of the Sale Period, the Secured

14 Claim shall automatically revert to its post-foreclosure judgment terms, less any payments received

15 to such date; provided, however, that the Debtor (and/or its successor in interest, including an

16 appointed trustee) shall retain any and all objections to such Claim, including counterclaims.

17        7.    <u>Motion to Sell</u>. The parties agree that any Order on Debtor's Motion to Sell the

18 Property shall reflect the terms stated herein, including that Creditor's Claim is undisputed and

19 shall be paid through escrow in accordance with the terms stated herein. Debtor agrees to allow

20 counsel for Creditor to review and approve any order on the Motion to Sell before it's uploaded

21 with the Court to ensure compliance with this Stipulation.

22        8.    <u>Settlement Motion</u>. The parties agree that any Order on Debtor's Settlement

23 Motion t shall reflect the terms stated herein and Debtor agrees to allow counsel for Creditor to

24 review and approve any such order on the Settlement Motion before it's uploaded with the Court

25 to ensure compliance with this Stipulation.

26        9.    Debtor shall attach a copy of this Stipulation to any Chapter 11 Plan filed in this

27 case as an exhibit, including any subsequently amended or modified Plan, and said Plan shall

28 expressly incorporate the terms and provisions of this Stipulation by reference. In the event the

Court does not require a subsequent amended Plan, in the alternative, this Stipulation shall be

attached to and incorporated by reference into any Oder confirming the Debtor's Chapter 11 Plan, or the final Plan attached to the Order Confirming the Debtor's Plan. Further, the terms and provisions of this Stipulation may not be modified, altered, or changed by any subsequent Chapter 11 Plan without the express written consent of the Creditor, or pursuant to noticed motion with the Court.

10.     In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Loan under its foreclosure judgment terms prior to commencement of these proceedings, less any payments received to such date; provided, however, that the Debtor (and/or its successor in interest, including an appointed trustee) shall retain any and all objections to such Claim, including counterclaims.

11.     In exchange for the forgoing, and provided Debtor's Plan reflects the terms and provisions herein, Creditor shall provide a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization for the Secured Claim.

Dated: April 6, 2023                    ALDRIDGE PITE, LLP

                                        /s/ *Jesse A.P. Baker*
                                        Jesse A.P. Baker (OSB 100017)
                                        Attorney for Deutsche Bank National Trust
                                        Company, as Trustee for HarborView Mortgage
                                        Loan Trust Mortgage Loan Pass-Through
                                        Certificates, Series 2006-9


Date: April 6, 2023                     VANDEN BOS & CAPMAN, LLP

                                        */s/Christopher N. Coyle*
                                        Christopher N. Coyle (OSB 073501)
                                        Of Attorneys for Debtor

Exhibit 3 - Page 6 of 7

- 6 -

Case 22-31873-thp11    Doc 89    Filed 04/04/23

# CERTIFICATE OF SERVICE

I certify that on **April 7, 2023**, I served a true and complete copy of Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9's *Stipulation Re: Non-Material Modification to Debtor's Sub V Chapter 11 Plan and Treatment of Claim* to the parties listed below as follows:

**Via U.S. MAIL:**
Blue Moon Property Group, LLC
17600 Pacific Hwy Unit 338
Marylhurst, OR 97036

**Via ECF:**
DOUGLAS R RICKS
319 SW Washington St #520
Portland, OR 97204
ecfmail@vbcattorneys.com

CHRISTOPHER N COYLE
319 SW Washington St #520
Portland, OR 97204-2690
chris@vbcattorneys.com

Amy E Mitchell
POB 2289
Lake Oswego, OR 97035
mitchelltrustee@comcast.net

US Trustee, Portland
1220 SW 3rd Ave., Rm. 315
Portland, OR 97204
USTPRegion18.PL.ECF@usdoj.gov

By: */s/ McKenna Klassen*
McKenna Klassen

**Exhibit 3 - Page 7 of 7**

Case 22-31873-thp11    Doc 89    Filed 04/07/23

All figures are subject to change until reviewed with tax counsel and/or CPA.

## PERSONAL ANALYSIS

### Real Estate

| Title (residence, rental, commercial, etc) | Property Address | Estimated Gross Sales Price/Value | Commission & Closing Costs (est. 7%) Subtotal | Less Liens/ Mortgages | Net to Seller Before Taxes | Basis | Estimated Capital Gain (taxable) | Estimated Capital Gains Tax (24%) | Net to Seller after Taxes & Liens | Available for Creditors |
|---|---|---|---|---|---|---|---|---|---|---|
| Real Property | 3220 Southshore Blvd., Lake Oswego, OR 97034 | 2,000,000.00 | 1,940,000.00 | 1,394,277.75 | 545,722.25 | 2,125,657.51 | 0.00 | 0.00 | 545,722.25 | 545,722.25 |
| | | | 60,000.00 | | | | | | | |
| **Subtotal, Equity (if any) in Real Estate** | | **2,000,000.00** | **1,940,000.00** | **1,394,277.75** | **545,722.25** | | **0.00** | **0.00** | **545,722.25** | **545,722.25** |

### Schedule B - Personal Property

| Title | Owner | Description of Asset | Value | Commission & Closing Costs (est. 7%) | Less Liens/ Mortgages | Net Value | | | | Available for Creditors |
|---|---|---|---|---|---|---|---|---|---|---|
| Cashier's Check | | Cash and Cash Equivalents | 2,000.00 | | 0.00 | 2,000.00 | | | | 2,000.00 |
| **Subtotal, Equity (if any) in Personal Property** | | | **$2,000.00** | | **$0.00** | **$2,000.00** | **$0.00** | **$0.00** | **$0.00** | **$2,000.00** |
| **TOTALS:** | | | **$2,002,000.00** | **$60,000.00** | **$1,940,000.00** | **$1,394,277.75** | **$547,722.25** | **$0.00** | **$0.00** | **$545,722.25** | **$547,722.25** |

**Exhibit 4 - Page 1 of 2**
Case 22-31873-thp11    Doc 89    Filed 04/14/23

| | | | |
|---|---|---|---|
| **FROM EQUITY IN REAL ESTATE:** | | | $545,722.25 |
| **FROM EQUITY IN PERSONAL PROPERTY:** | | | $2,000.00 |
| **TOTAL EQUITY AVAILABLE FOR CREDITORS** | | | $547,722.25 |
| **LESS ADMINISTRATIVE EXPENSES:** | | | |
| Varden Bos & Chapman | $45,000.00 | | |
| Estimated Trustee Attorney & Accountant fees/costs | $5,000.00 | | |
| | $50,000.00 | | ($50,000.00) |
| **LESS CHAPTER 7 TRUSTEE FEES:** | | | |
| **Calculation for Trustee's Commission** | | | |
| Sale Price of Real Property (Less Exemption) | $2,000,000.00 | | |
| Sale Price of Personal Property (Less Exemption) | $2,000.00 | | |
| Subtotal: | $2,002,000.00 | | |
| 25% - First $5,000 | $1,250.00 | | |
| 10% - $5,000 - $50,000 | $4,500.00 | | |
| 5% - $50,000 - $1,000,000 | $47,500.00 | | |
| 3% over $1,000,000 | $30,060.00 | | |
| Total | $83,310.00 | | ($83,310.00) |
| **Subtotal, Available for Creditors** | | | $414,412.25 |
| **LESS PRIORITY CLAIMS:** | | | $0.00 |
| **LESS SECURED CLAIMS:** | | | $0.00 |
| **TOTAL AVAILABLE FOR UNSECUREDS:** | | | $414,412.25 |

All figures are subject to change until reviewed with tax counsel and/or CPA.

**Exhibit 4 - Page 2 of 2**

Case 22-31873-thp11    Doc 89    Filed 04/14/23

Christopher N. Coyle OSB# 073501
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

Of Attorneys for Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 22-31873-thp11 |
| Blue Moon Property Group, LLC | **CHAPTER 11, SUBCHAPTER V, PLAN** (Dated: 02/07/2023) |
| Debtor-in-Possession | |

### SMALL BUSINESS DEBTOR'S CHAPTER 11, SUBCHAPTER V, PLAN

Debtor-in-Possession Blue Moon Property Group, LLC, as debtor and debtor-in-possession (the "Debtor" or "BMPG") in the above-captioned chapter 11, subchapter V, case (the "Chapter 11 Case") hereby submits this Chapter 11, Subchapter V, Plan (the "Plan").

### NOTICE TO INTERESTED PARTIES RE: THE PLAN

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, to evaluate the terms of this Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DATE SET FORTH IN THE NOTICE OF HEARING, WHICH WILL BE MAILED TO YOU SEPARATELY.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney. Questions regarding this Plan may be directed to the Attorneys for the Debtor-in-Possession using the contact information provided above. Please be aware that, as the legal representatives of the Debtor-in-Possession, the Attorneys cannot provide other parties with legal advice.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 1 OF 37** Case 22-31873-thp11    Doc 89    Filed 04/14/23

# SECTION 1
# HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.** <u>**Nature of the Debtor's Business.**</u>

The Debtor is a Oregon domestic business corporation with a principal place of business in Lake Oswego, Oregon. The Debtor is a wholly-owned subsidiary of Brilliant Homes, LLC which owns certain residential real estate located at 3220 Southshore Blvd, Lake Oswego, OR 97034 (the "Southshore Property") which Brilliant Homes, LLC and itself have redeveloped and prepared for sale.

**1.2.** <u>**History of Business Operations of the Debtor**</u>

The Debtor was formed on November 9, 2022 with the intent to serve as a special purpose entity relating to the redevelopment and sale of the Southshore Property

**1.3.** <u>**Filing of the Debtor's Chapter 11 Case.**</u>

On November 9, 2022 (the "Petition Date"), a voluntary petition seeking relief under chapter 11, subchapter V, of title 11 of the United States Code (the "Bankruptcy Code") was filed by the Debtor.

**1.4.** <u>**Legal Structure and Ownership.**</u>

Membership interests in the Debtor are as follows:

Brilliant Homes, LLC:      100.0%

**1.5.** <u>**Debtor's Assets.**</u>

A Summary of the Debtor's Assets is included as part of the Liquidation Analysis attached hereto as **Exhibit 1**. The valuations for the assets are based on the Debtor's assessment of the market values.

**1.6.** <u>**Debtor's Liabilities.**</u>

A Claims Summary is included on **Exhibit 2**, attached hereto.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 2 OF 37** Case 22-32873-thp11    Doc 89    Filed 04/14/23

### 1.7. <u>Current and Historical Financial Conditions.</u>

The Debtor was formed just prior to the Petition Date, so there is no historic financial information for the Debtor. The Debtor's current financial performance is of limited relevance to the Plan; as described in Article 2, the Debtor's Plan proposes the sale of the Southshore Property together with interim operations to enable adequate protection payments to secured lender(s) as described herein. With respect to the Debtor's current financial condition, please see **Exhibits 1** and **2**, relating to assets and claims, and the most recent Monthly Operating Report attached hereto as **Exhibit 3**.

### 1.8. <u>Significant Events During the Bankruptcy Case.</u>

The Debtor-in-Possession has taken a number of steps in anticipation of the filing and confirmation of the Plan. These include, but are not limited to, the following:

- Continued marketing of the Southshore Property to maximize the value of the property for holders of Claims, including substantial price reductions;
- Employment of real estate professionals to continue marketing of the Southshore Property;
- Negotiations with holders of Claims to determine amicable treatment of Claims following sale, either prior to or following confirmation of the Plan;

### 1.9. <u>Projected Recovery of Avoidable Transfers.</u>

The Trustee has the exclusive right and sole discretion to pursue any actions arising under chapter 5 of the Code under this Plan. If you received a payment or other transfer of property within 90 days of bankruptcy, the Trustee may seek to avoid such transfer. Any funds recovered from such avoided transfers shall be used to make additional payments to Creditors under the Amended Plan.

**ARTICLE 2**
**THE PLAN**

The Debtor's Plan describes how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 3 OF 37**     Case 22-31873-thp11     Doc 89     Filed 04/14/23

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1.  <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A.  **Administrative Expenses.**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or, in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.     If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.     If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.     Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 4 OF 31**  Case 22-31873-thp11    Doc 89    Filed 04/14/23

allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Paid in the ordinary course or, if not paid, paid from Southshore Property Proceeds. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | N/A |
| Professional fees | $30,000 *(estimated)* | Upon application under §330 and after Bankruptcy Court approval, preconfirmation professional fees paid in full from Southshore Property Proceeds; postconfirmation amounts to be paid from Southshore Property Proceeds. |
| Subchapter V Trustee | $5,000 *(estimated)* | Upon application under §330 and after Bankruptcy Court approval, preconfirmation amount paid in full from Southshore Property Proceeds; postconfirmation amounts to be paid from Southshore Property Proceeds. |
| TOTAL | $35,000.00 | |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 5 OF 37** Case 22-31873-thp11    Doc 89    Filed 04/14/23

**B. Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority | Estimated Amount Owed | Treatment |
|---|---|---|
| IRS | $ 0.00 | Not Applicable. |
| ODR | $0.00 | Not Applicable. |

**2.2. <u>Classes of Claims and Equity Interests.</u>**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A. Classes of Secured Claims.**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class | Description | Claim Amount | Impairment | Treatment Summary |
|---|---|---|---|---|
| 1 | Deutsche Bank National Trust Company, as Trustee for HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9 | $ 1,294,947.51 (per Claim 1; disputed by Debtor) | Impaired | <u>The Treatment of the Class 1 Claim shall be pursuant to the parties' Claim Stipulation, which is attached to the Order Confirming Plan as Exhibit 3 and incorporated herein by this reference.</u>~~The Allowed Claim(s) in this Class shall be paid in full from the Southshore Property Proceeds with interest from the Petition Date accruing at the rate of the Current Index plus one and 775/1000 percentages points (1.775%). *As of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable*~~ |

Page 6 of 22     CHAPTER 11, SUBCHAPTER V, PLAN (Dated: 02/07/2023)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 68 OF 37**     Case 22-31873-thp11     Doc 89     Filed 04/14/23

| Class | Description | Claim Amount | Impairment | Treatment Summary |
|-------|-------------|--------------|------------|-------------------|
| | | | | *interest rate would be 4.913%.* <br><br> From the Effective Date through the Southshore Closing, Class 1 will receive monthly adequate protection payments in the amount of the monthly accruing interest (e.g. the Current Index plus one and 775/1000 percentages points (1.775%)) commencing on the Effective Date on the Allowed Claim. *As of February 1, 2023, the Current Index is 3.138% and, therefore, the applicable interest rate would be 4.913%.* <br><br> The claim(s) in this Class are disputed by the Debtor. |
| 2 | Pans and Law Creditors (as described in Article 2.7). | Approx. $360,546.38 (face value of judgments), plus accrued interest | Impaired | The Allowed Claims in this Class shall be compromised as follows: (1) from the Southshore Property Proceeds, Class 2 shall be paid the total amount of $90,000 plus 1.5% of the final selling price of the Southshore Property. |
| 3 | All other Allowed Secured Creditors (including Red Phoenix Properties, LLC and Clackamas County) | $224,360 | ~~Impaired~~Unimpaired | The Allowed Claim(s) in this Class shall be paid in full from the Southshore Property Proceeds. |

**B.    Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. Debtor believes that all Claims entitled to priority under §§ 507(a)(1), (4), (5), (6), and (7) of the Code have been satisfied.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 02-37** Case 22-31873-thp11    Doc 89    Filed 04/14/23

**C. Classes of General Unsecured Claims.**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 9, which contains general unsecured Claims against the Debtor:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 4 | General Unsecured Class | Impaired | The Allowed Claim(s) in this Class shall be paid from the Southshore Property Proceeds to the extent of such proceeds following payment of Administrative Expenses, Priority Tax Claims, and senior Classes (including Classes 1, 2, and 3).<br><br>The Allowed Claims in this Class will be paid not less than the amount required by Section 1129(a)(7), which the Debtor estimates to be $414,412.25~~302,162.29~~ based on the liquidation analysis attached hereto as **Exhibit 4~~1~~**.<br><br>Payment of any dividend will depend on the amounts of allowed secured, priority (including costs of administration and the Debtor's attorney's fees), and nonpriority unsecured claims. To the extent Class 4 Allowed Claims are entitled to payment, such payment will be paid from the Southshore Property Proceeds with other payments to creditors. |

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 70 OF 99** Case 22-31873-thp11     Doc 89     Filed 04/14/23

### D.    Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, the Equity Interest holders are the stockholders. The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 45 | Equity Interest Holders | Unimpaired | Equity Interest Holders shall retain such interest in the Debtor post-confirmation in the same manner as such interest was held pre-confirmation. |

### 2.3.    Treatment of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

**The Debtor believes that there are no pre-petition Executory Contracts or Unexpired Leases.** The Debtor will be conclusively deemed to have rejected all pre-petition executory contracts and/or unexpired leases not assumed before the date of the order confirming the Plan. Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

### 2.5.    Means for Implementation of the Plan.

The Plan will be performed and implemented through a sale of the Southshore Property in an amount sufficient to perform all of the obligations under the Plan, which include payment to Allowed Secured Claims as described in Article 2.2A and herein, Administrative Expenses, Priority Tax Claims, and payment to Allowed Unsecured Claims as described in Article 2.2C

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 9 OF 31**    Case 22-31873-thp11    Doc 89    Filed 04/14/23

and herein in an amount sufficient to satisfy the requirements of Sections 1129(a)(7) and 1191(c).

Following closing of the Southshore Property, after payment of closing costs, including commissions, the remaining proceeds shall be deemed the Southshore Property Proceeds.

Subject to the laws, regulations, and policies governing the escrow agent, the Debtor shall direct that the escrow agent make payment, pursuant to the terms of the Plan, to Holders of Allowed Secured Claims (e.g. Classes 1, 2, and 3) from the Southshore Property Proceeds. To the extent that the escrow agent cannot make payment, pursuant to the terms of the Plan, to Allowed Secured Claims, or any of them, the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor and the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan, to Allowed Secured Claims from the remaining Southshore Property Proceeds.

If the escrow agent can make payment to Allowed Secured Claims, thereafter, the Debtor shall direct the escrow agent to make payment to Allowed Secured Claims pursuant to the terms of the Plan, to Holders of Administrative Expenses and Priority Tax Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Client Trust Account of Vanden Bos & Chapman, LLP subject to the parties respective liens; thereafter, the Debtor, pursuant to Article 2.10, shall promptly make payment, pursuant to the terms of the Plan to Allowed Secured Claims, Holders of Administrative Expenses and Priority Tax Claims.~~If the escrow agent can make payment to Allowed Secured Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to make payment to Holders of Administrative Expenses and Priority Tax Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Administrative Expenses and Priority Tax Claims.~~

If the escrow agent can make payment to Administrative Expenses and Priority Tax Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to make payment to Holders of Allowed Unsecured Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor; thereafter, the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Allowed Unsecured Claims.~~If the escrow agent can make payment to Administrative Expenses and Priority Tax Claims, thereafter, the Debtor shall direct the escrow agent to make payment, pursuant to the terms of the Plan, to make payment to Holders of Allowed Unsecured Claims. If, due to the laws, regulations, and policies governing the escrow agent, the escrow agent cannot make such payment(s), the escrow agent shall disburse the remaining Southshore Property Proceeds to the Debtor the Debtor, pursuant to Article 2.10, shall make payment, pursuant to the terms of the Plan to Holders of Allowed Unsecured Claims.~~

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

EXHIBIT 5 - PAGE 10 OF 33  Case 22-31873-thp11    Doc 89    Filed 04/14/23

Upon payment of Allowed Secured Claims, Administrative Expenses, Priority Tax Claims, and Allowed Unsecured Claims, the escrow agent or Debtor, as applicable, shall disburse the remaining Southshore Property Proceeds to the Debtor.

**2.6.** **General Compromise and Settlement of Claims, Interests, and Controversies.**

As otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided pursuant to the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made or treatment provided on account of such Allowed Claim or Interest.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

Except as otherwise provided herein, all treatment of Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against and Interests in the Debtors and their Estates and Causes of Action against other Entities.

**2.7.** **Additional Provisions Applicable to Class 2.**

Class 2 consists of Holders of Allowed Secured Claims of (a) Gretchen Pan, an individual; Gretchen Pan, as successor in interest to the Elizabeth Steiner Trust; and Xianghua 'Ed' Pan (collectively, the "Pans") and (b) Darrel L. Deem, an individual; Darrel L. Deem, on behalf of his Roth IRA #14459; David G. Law, an individual; David G. Law, on behalf of his Roth IRA #11396; Janine W. Law, an individual; Janine W. Law, on behalf of her Roth IRA #12075; DJ Property Solutions, LLC, a Utah limited liability company; Deem Realty Funding, Inc., a Utah corporation; and Deem Investment Company, a Utah Corporation (collectively, the "Law Creditors").

The Pans and Law Creditors will independently negotiate the division of the payment from the Debtor. This Plan does not affect the validity of the judgments held by the Pans and Law Creditors against those judgment creditors; this Plan only addresses the judgment liens resulting from those judgments as against the Southshore Property. If, for any reason, the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 11 OF 38** Case 22-31873-thp11    Doc 89    Filed 04/14/23

Southshore Property is subject to a foreclosure and the Debtor, any affiliate, or any insider exercises such redemption rights as may exist under applicable law, the Debtor, any affiliate, or any insider (including, without limitation, Brilliant Homes, LLC, Ronnie Sapp, and Bradley Baker) shall be bound by the treatment afforded to Class 2.

### 2.8. <u>Injunction.</u>

Effective as of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor or Reorganized Debtor, as applicable, and their respective assets and properties: (i) commencing or continuing in any manner any action, suit or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against such entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting or enforcing any encumbrance of any kind against such entities or the property or the estate of such entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests treated, released, or settled pursuant to the Plan.

### 2.9. <u>Default Remedies.</u>

The Debtor shall complete the sale of the Southshore Property on or before November 15, 2023 (the "Sale Date"). If the Debtor fails to complete the sale of the Southshore Property on the Sale Date, if the Debtor has Southshore Property under contract on the Sale Date, the Debtor shall have a further forty-five (45) days to complete the sale of the Southshore Property.

If either (1) the Debtor has not completed the sale of the Southshore Property and does not have the Southshore Property under contract for sale on the Sale Date, or, (2) if the Debtor has not completed the sale of the Southshore Property by that date forty-five (45) days after the Sale Date, Kenneth Eiler shall, without further notice, be vested with full, exclusive and plenary power to sell the Southshore Property. ~~If the Debtor has not completed the sale of the Southshore Property and does not have the Southshore Property under contract for sale on the Sale Date, or, if the Debtor has not completed the sale of the Southshore Property by that date thirty (30) days following the Sale Date, Kenneth Eiler shall, without further notice, be vested with full, exclusive and plenary power to sell the Southshore Property.~~ In the event that Kenneth Eiler is unable or unwilling to serve as Sale Agent, the holder of the Class 1 Allowed

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 12 OF 33** Case 22-31873-thp11   Doc 89   Filed 04/14/23

Secured Claim shall name the Sale Agent from the then-serving Panels of Chapter 7 Trustees for the District of Oregon and the District of Western Washington. The Sale Agent shall have the power to sell the Southshore Property, free and clear of liens, claims, encumbrances and interests, without interference from Debtor or holders of Claims, or holders of any interest(s) in the Southshore Property, and to execute and deliver deeds, bills of sale, and other transfer instruments necessary to effectuate the transfer of title.

### 2.10. Payments.

The Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

### 2.11. Post-Confirmation Management.

The manager(s) of the Debtor immediately prior to the Effective Date shall serve as the initial manager(s) of the Reorganized Debtor on and after the Effective Date. Each member of the Debtor or Reorganized Debtor, as applicable, shall serve in accordance with applicable non-bankruptcy law and the Debtor's ~~articles of incorporation~~ articles of organization, as each of the same may be amended from time to time.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

Ronnie Sapp, Manager – none

### 2.12. Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: (1) Confirmation of the Plan under § 1191(a) would ~~general~~ generate a loss of tax attributes and higher income tax liability during the performance of the Plan; (2) Sale of the Southshore Property would result in tax obligations to member(s) of the Debtor; and (3) Debtor is unaware of any tax consequences on Creditors of any discharge, and any tax consequences of receipt of Plan consideration after Confirmation.

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. Ability to Initially Fund Plan.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

EXHIBIT 5 - PAGE 13 OF 38    Case 22-31873-thp11     Doc 89     Filed 04/14/23

The Debtor had enough cash on hand on the Effective Date of the Plan, or, in the alternative, to the extent that the Debtor fails to have sufficient cash on hand to make the payments required on the Effective Date, the Equity Interest Holders will be required to make such payments on behalf of the Debtor-in-Possession, sufficient to pay all the Claims and expenses that are entitled to be paid following the Effective Date.

### 3.2. <u>Ability to Make Future Plan Payments And Operate Without Further Reorganization</u>.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan. The ability to make future plan payments is based on the refinance and/or sale of the Southshore Property described in Article 2.5.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections**.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 14 OF 33** Case 22-31873-thp11    Doc 89    Filed 04/14/23

# ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as ~~Exhibit 1~~Exhibit 4.

# ARTICLE 5
## DISCHARGE.

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code;

or

**If the Plan is confirmed under § 1191(b),** therefore, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1)     on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2)     if applicable, of the kind specified in section 523(a) of this title.

# ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.     Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE** Case 22-31873-thp11    Doc 89    Filed 04/14/23

of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. <u>Binding Effect.</u>

If the ~~Amended Plan~~ Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. <u>Severability.</u>

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. <u>Retention of Jurisdiction by the Bankruptcy Court.</u>

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Disputed Claims, including Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. <u>Captions</u>.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Nonwaiver of Rights.</u>

Notwithstanding confirmation of the Plan, Debtor shall retain and does not waive any offsets, counterclaims, or recoupment against any Creditor. ~~Furthermore, confirmation of the Plan shall not divest or otherwise disqualify the Debtor for any discount, forgiveness, or other relief from any Claim provided for in the Plan, including, but not limited to, any forgiveness available pursuant to Section 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), any rules implementing the CARES Act, or any other section of the CARES Act.~~

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 16 OF 38** Case 23-30873-thp11     Doc 89     Filed 04/14/23

### 6.7. Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.8. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### 6.9. Modification of Articles of Organization. The Debtor's articles of organization and, if applicable, operating agreement shall be deemed modified to include a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan:

~~Exhibit 1 – Liquidation Analysis~~ [INTENTIONALLY OMITTED]
Exhibit 2 – Claim Summary
Exhibit 3 – Available Current and Historical Financial Information
Exhibit 4 – Liquidation Analysis

## ARTICLE 8

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

EXHIBIT 5 - PAGE 17 OF 38     Case 23-30373-thp11     Doc 89     Filed 04/14/23

## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 16 OF 37** Case 22-31873-thp11    Doc 89    Filed 04/14/23

Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned will be provided separately. Ballots should be mailed to the following address: Vanden Bos & Chapman, LLP, Attn: Colin, 319 SW Washington St., Ste. 520, Portland, OR 97204.  Must be returned pursuant to the Court's **Order Fixing Time for Filing Acceptances or Rejections of Plan; and Notice of Confirmation Hearing.**

**How Do I Determine When and How Much I Will Be Paid?** In Article 2.2, the Debtor has provided a written summary of what it anticipates each class of creditors will receive under the Plan.

**ARTICLE 9**
**DEFINITIONS**

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.**    **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.**    **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**    **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5.**    **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**    **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 19 OF 33** Case 22-31873-thp11    Doc 89    Filed 04/14/23

Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.** **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.** **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of Oregon.

**9.12.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.** **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Blue Moon Property Group, LLC ~~U.S. Outdoor Holding LLC~~ is the Debtor-in-Possession.

**9.15.** **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.** **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.** **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 20 OF 33** Case 22-31873-thp11    Doc 89    Filed 04/14/23

**9.18.** **Confirmation Hearing**: The hearing to be held to consider confirmation of the Plan.

**9.19.** **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.20.** **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.21.** **Current Index:** The most recent Index figure available as of the date of Confirmation.

**9.22.** **Debtor** and **Debtor-in-Possession**: Blue Moon Property Group, LLC, the debtor-in-possession in this Chapter 11 Case.

**9.23.** **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.** **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.** **Effective Date**: 30 Days after entry of the Confirmation Order.

**9.26.** **Enjoined Party**: All entities, as defined in section 101(15) of the Bankruptcy Code, who have held, hold, or may hold Claims or Interests that been released, discharged, or are subject to the provisions of the Plan.

**9.27.** **Equity Interest**: An ownership interest in the Debtor.

**9.28.** **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.29.** **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30.** **Index**: The "Twelve Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

**9.31.** **IRC:** The Internal Revenue Code.

**9.32.** **IRS**: The Internal Revenue Service.

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 5 - PAGE 21 OF 33** Case 21-33873-thp11     Doc 89     Filed 04/14/23

**9.33.** **ODR:** Oregon Department of Revenue.

**9.34.** **Petition Date**: ~~September 4, 2020~~November 9, 2022, the date the chapter 11 petition for relief was filed.

**9.35.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.36.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.37.** **Reorganized Debtor**: The Debtor after the Effective Date.

**9.38.** **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.39.** **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.40.** **Trustee**: Amy E. Mitchell, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.41.** **Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: <u>February 7, 2023</u>

Respectfully submitted;

VANDEN BOS & CHAPMAN, LLP

BLUE MOON PROPERTY GROUP, LLC

By:<u>/s/ Christopher N. Coyle</u>
    Christopher N. Coyle, OSB #073501
    Of Attorneys for Debtor-in-Possession

By:<u>/s/ Ronnie Sapp</u>
    Ronnie Sapp, Manager
    Debtor-in-Possession

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

# EXHIBIT 1

## [INTENTIONALLY OMITTED]

CLAIMS ANALYSIS

| Class # | Claim # | Creditor Name | Amt. Owed Per Schedule F | Amt. Owed Per Claim | Difference | Allowed Amount |
|---|---|---|---|---|---|---|
| **SECURED** | | | | | | |
| 1 | 1 | Deutsche Bank National Trust | $ 1,169,156.00 | $ 1,294,947.51 | $ (125,791.51) | $ 1,294,947.51 |
| 2 | | Pans & Law Creditors | $ 124,350.00 | $ - | $ 124,350.00 | $ 124,350.00 |
| 3 | | Red Phoenix Properties, LLC | $ 210,000.00 | | $ 210,000.00 | $ 210,000.00 |
| | | | | | | $ 1,629,297.51 |
| | | | | | | |
| **PRIORITY** | | | | | | |
| | | ODR | $ - | $ - | $ - | $ - |
| | | IRS | $ - | $ - | $ - | $ - |
| | 3 | Annika Eriksson (Priority) | $ - | $ 3,350.00 | $ (3,350.00) | $ 3,350.00 |
| | 4 | Donald Buckhout | $ - | $ 3,350.00 | $ (3,350.00) | $ 3,350.00 |
| | | | | | | $ 6,700.00 |
| | | | | | | |
| **GENERAL UNSECURED** | | | | | | |
| 4 | 3 | Annika Eriksson (Non-Priority) | | $ 159.50 | $ (159.50) | $ 159.50 |
| 4 | 2 | Lake Oswego Corporation | | $ 92,766.20 | $ (92,766.20) | $ 92,766.20 |
| 4 | 4 | Donald Buckhout | | $ 159.50 | $ (159.50) | $ 159.50 |
| 4 | | Brilliant Homes, LLC | $ 480,000.00 | | $ 480,000.00 | $ 480,000.00 |
| 4 | | Brilliant Homes, LLC | $ 2,000.00 | | $ 2,000.00 | $ 2,000.00 |
| | | **Subtotal Class 4** | | | | $ 575,085.20 |

This Claims Analysis lists scheduled and filed claims. Listing of scheduled and filed claims is without prejudice to Debtor or another party in interest disputing such claim(s).

**Fill in this information to identify the case:**

Debtor Name    Blue Moon Property Group, LLC

United States Bankruptcy Court for the: District of Oregon

Case number:   22-31873-thp11

☐ Check if this is an
    amended filing

Official Form 425C

# Monthly Operating Report for Small Business Under Chapter 11   12/17

Month:    Dec 2022

Date report filed:   01/23/2023
                    MM / DD / YYYY

Line of business:   Real Estate

NAISC code:   531390

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:    Ronald G. Sapp

Original signature of responsible party   /s/ Ronald G. Sapp

Printed name of responsible party    Ronald G. Sapp

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

17. Have you paid any bills you owed before you filed bankruptcy? ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☐ ☑ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ _____0.00

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ _____0.00

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    − $ _____0.00

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ _____0.00

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

    = $ _____0.00

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    *(Exhibit E)*

    $ _____0.00

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                      $ _____ 0.00

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                    _____ 0

27. What is the number of employees as of the date of this monthly report?       _____ 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?              $ _____ 0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?  $ _____ 0.00

30. How much have you paid this month in other professional fees?               $ _____ 0.00

31. How much have you paid in total other professional fees since filing the case?   $ _____ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ _____ 0.00 | − | $ _____ 0.00 | = | $ _____ 0.00 |
| 33. **Cash disbursements** | $ _____ 0.00 | − | $ _____ 0.00 | = | $ _____ 0.00 |
| 34. **Net cash flow** | $ _____ 0.00 | − | $ _____ 0.00 | = | $ _____ 0.00 |

35. Total projected cash receipts for the next month:                          $ _____ 0.00

36. Total projected cash disbursements for the next month:                   − $ _____ 0.00

37. Total projected net cash flow for the next month:                        = $ _____ 0.00

Exhibit 3 - Page 3 of 11

**EXHIBIT 5 - PAGE 27 OF 37**  Case 22-31873-thp11    Doc 49    Filed 01/23/23

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐  39.  Bank reconciliation reports for each account.

☐  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

**Monthly Operating Report for Small Business Under Chapter 11**

**Exhibit A**

*Not applicable.*

**Exhibit B**

*Not applicable.*

**Exhibit C**

*See attached.*

**Exhibit D**

*Not applicable; no disbursements in the reporting period.*

**Exhibit E**

*Not applicable.*

**Exhibit F**

*Not applicable.*

| Date | Amount |
|------|--------|
| 12/5/2022 | $ 500.00 |

# Initiate Business Checking℠

December 31, 2022 ■ Page 1 of 5



BLUE MOON PROPERTY GROUP, LLC
DEBTOR IN POSSESSION
CH 11 CASE #22-31873 (MOR)
17600 PACIFIC HWY UNIT 338
MARYLHURST OR 97036-0801

**Questions?**

Available by phone Mon–Sat 7:00am–11:00pm
Eastern Time, Sun 9:00am–10:00pm Eastern Time:
We accept all relay calls, including 711

**1-800-CALL-WELLS** (1-800-225-5935)

En español 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (115)
P.O. Box 6995
Portland, OR 97228-6995

## Your Business and Wells Fargo

Visit wellsfargo.com/digitalbusinessresources to explore tours, articles, infographics, and other resources on the topics of money movement, account management and monitoring, security and fraud prevention, and more.

### Account options

A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

| | |
|---|---|
| Business Online Banking | ☑ |
| Online Statements | ☐ |
| Business Bill Pay | ☑ |
| Business Spending Report | ☑ |
| Overdraft Protection | ☐ |

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 12/5 | $0.00 |
| Deposits/Credits | 500.00 |
| Withdrawals/Debits | - 0.00 |
| **Ending balance on 12/31** | **$500.00** |

Account number ▮▮▮▮4433

BLUE MOON PROPERTY GROUP, LLC
DEBTOR IN POSSESSION
CH 11 CASE #22-31873 (MOR)

Oregon account terms and conditions apply

For Direct Deposit use
Routing Number (RTN): 123006800

For Wire Transfers use
Routing Number (RTN): 121000248

### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

# 2 of 5



## Transaction history

| Date | Check Number | Description | Deposits/Credits | Withdrawals/Debits | Ending daily balance |
|------|------|------|------|------|------|
| 12/5 | | Etransfer IN Branch/Store - From Checking 19181 Willamette Dr West Linn OR 0771 | 500.00 | | 500.00 |
| Ending balance on 12/31 | | | | | 500.00 |
| **Totals** | | | **$500.00** | **$0.00** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

### Monthly service fee summary

For a complete list of fees and detailed account information, see the disclosures applicable to your account or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 12/05/2022 - 12/31/2022 | Standard monthly service fee $10.00 | You paid $0.00 |
|------|------|------|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. Your fee waiver is about to expire. You will need to meet one of the requirements to avoid the monthly service fee.

| How to avoid the monthly service fee Have any ONE of the following account requirements | Minimum required | This fee period |
|------|------|------|
| • Average ledger balance | $1,000.00 | $500.00 ☐ |
| • Minimum daily balance | $500.00 | $500.00 ⊡ |

The Monthly service fee summary fee period ending date shown above includes a Saturday, Sunday, or holiday which are non-business days. Transactions occurring after the last business day of the month will be included in your next fee period.
CIC1

### Account transaction fees summary

| Service charge description | Units used | Units included | Excess units | Service charge per excess units ($) | Total service charge ($) |
|------|------|------|------|------|------|
| Cash Deposited ($) | 0 | 5,000 | 0 | 0.0030 | 0.00 |
| Transactions | 0 | 100 | 0 | 0.50 | 0.00 |
| **Total service charges** | | | | | **$0.00** |

## ☑ IMPORTANT ACCOUNT INFORMATION



ATM Check Deposit Limit

Effective March 15, 2023, we are changing the following paragraph in the "Our right to decline deposits" subsection within the "Depositing Funds" section of the Deposit Account Agreement.

We may decline all or part of a deposit, including cash, for any reason. This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion.

The new paragraph is as follows:

We may decline all or part of a deposit, including cash, for any reason. This could happen, for example, if a payee isn't a co-owner, authorized signer, or authorized representative on your account, we can't verify an endorsement, the check was issued from a credit account, the dollar amount of the deposit, the check looks suspicious, or it's a non-U.S. item. If we decline a deposit that you mailed to us, we may return it to you at your cost (including charging you for postage and handling to return foreign currency coin or paper), or retain any invalid checks or other documents included in the deposit without crediting your account, at our discretion. There are limits on the total dollar amount of checks that can be deposited at Wells Fargo ATMs per transaction. We may decline check deposits that exceed $1 million.

Effective January 31, 2023, in the section of your Deposit Account Agreement ("Agreement") titled "Available Balance, Posting Transactions, and Overdraft", under the subsection "How we process and post transactions to your account", the section titled "Step 2: we sort your transactions into categories" is deleted and replaced with the following:

Step 2: we sort your transactions into categories

- We credit deposits received before the cutoff time

- We subtract withdrawals and payments we have previously authorized that we cannot return unpaid such as debit card purchases, ATM withdrawals, account transfers, Bill Pay transactions, and teller-cashed checks. Transactions are generally sorted by date and time the transaction was conducted or, for some transactions, the day we receive it for payment, or the time assigned by our system. If date and time are the same, we post from lowest to highest dollar amount.

- We pay your checks and preauthorized ACH payments, such as electronic payments you have authorized a company to withdraw using your account and routing number. Transactions are generally sorted by date and time received by the Bank, and if date and time are the same, we post from lowest to highest dollar amount. Merchant-issued payment card transactions (e.g., an ACH payment associated with a purchase you made using a store-issued debit card) post after all other transactions in this category.

Determining Date and Time

- Cutoff time is based on the location where the deposit or transfer was made.

- For debit card transactions, if we do not have date and time information, we use the day we receive it for payment from the merchant.

- For some transactions, such as Bill Pay or teller-cashed checks, a different time may be assigned by our systems.

NEW YORK CITY CUSTOMERS ONLY -- Pursuant to New York City regulations, we request that you contact us at 1-800-TO WELLS (1-800-869-3557) to share your language preference.

Tax Season Reminder: Wells Fargo delivers tax documents - either by mail or online depending on your delivery preference - no later than January 31 or by the IRS deadline of February 15 for brokerage accounts. Depending on the U.S. Postal delivery service,



you should expect to receive your tax documents no later than the end of February. You can update your tax document delivery preferences by visiting Wells Fargo Online®.

The Internal Revenue Service (IRS) requires Wells Fargo to report information regarding the amount of interest, dividend or miscellaneous income earned as well as gross proceeds from sales by providing you with various IRS Forms 1099 based on the different types of transactions that occurred in your account during the calendar tax year (the IRS reportable threshold). For example, if you have interest or dividends in the amount of $10 or more during that timeframe, you will receive a Form 1099-INT from Wells Fargo.

For more information, visit Wells Fargo Tax Center at https://www.wellsfargo.com/tax-center/.

Other Wells Fargo Benefits

Shopping online this Holiday Season? Avoid scams by watching for red flags like pressure to buy right away, rude or pushy language, or unusually specific ways to pay such as gift cards, crypto or payment apps. Learn more at www.wellsfargo.com/security.



## Important Information You Should Know

• To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts, Wells Fargo Bank, N.A. may furnish information about deposit accounts to consumer reporting agencies. You have the right to dispute the accuracy of information that we have furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

• In case of errors or questions about other transactions (that are not electronic transfers): Promptly review your account statement within 30 days after we made it available to you, and notify us of any errors.

• If your account has a negative balance: Please note that an account overdraft that is not resolved 60 days from the date the account first became overdrawn will result in closure and charge off of your account. In this event, it is important that you make arrangements to redirect recurring deposits and payments to another account. The closure will be reported to Early Warning Services. We reserve the right to close and/or charge-off your account at an earlier date, as permitted by law. The laws of some states require us to inform you that this communication is an attempt to collect a debt and that any information obtained will be used for that purpose.

## Account Balance Calculation Worksheet

1. Use the following worksheet to calculate your overall account balance.

2. Go through your register and mark each check, withdrawal, ATM transaction, payment, deposit or other credit listed on your statement. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

3. Use the chart to the right to list any deposits, transfers to your account, outstanding checks, ATM withdrawals, ATM payments or any other withdrawals (including any from previous months) which are listed in your register but not shown on your statement.

**ENTER**
A. The ending balance
shown on your statement. . . . . . . . . . . . . . . . . . . . $ _____

**ADD**
B. Any deposits listed in your          $ _____
register or transfers into             $ _____
your account which are not             $ _____
shown on your statement.             + $ _____

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**CALCULATE THE SUBTOTAL**
(Add Parts A and B)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TOTAL $ _____

**SUBTRACT**
C. The total outstanding checks and
withdrawals from the chart above . . . . . . . . . . - $ _____

**CALCULATE THE ENDING BALANCE**
(Part A + Part B - Part C)
This amount should be the same
as the current balance shown in
your check register . . . . . . . . . . . . . . . . . . . . . . . $ _____

| Number | Items Outstanding | Amount |
|--------|-------------------|--------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| | Total amount $ | |

©2021 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. NMLSR ID 399801

All figures are subject to change until reviewed with tax counsel and/or CPA.

## PERSONAL ANALYSIS

### Real Estate

| Title (residence, rental commercial, etc) | Property Address | Estimated Gross Sales Price/Value | Commission & Closing Costs (est. 7%) | Subtotal | Less Liens/ Mortgages | Net to Seller Before Taxes | Basis | Estimated Capital Gain (taxable) | Estimated Capital Gains Tax (24%) | Net to Seller after Taxes & Liens | Available for Creditors |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Real Property | 3220 Southshore Blvd., Lake Oswego, OR 97034 | 2,000,000.00 | 60,000.00 | 1,940,000.00 | 1,394,277.75 | 545,722.25 | 2,125,657.51 | 0.00 | 0.00 | 545,722.25 | 545,722.25 |
| Subtotal, Equity (if any) in Real Estate | | 2,000,000.00 | 60,000.00 | 1,940,000.00 | 1,394,277.75 | 545,722.25 | | 0.00 | 0.00 | 545,722.25 | 545,722.25 |

### Schedule B - Personal Property

| Title | Owner | Description of Asset | Value | Commission & Closing Costs (est. 7%) | Less Liens/ Mortgages | Net Value | Basis | Estimated Capital Gain (taxable) | Estimated Capital Gains Tax (24%) | Net to Seller after Taxes & Liens | Available for Creditors |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cashier's Check | | Cash and Cash Equivalents | 2,000.00 | | 0.00 | 2,000.00 | | | | | 2,000.00 |
| Subtotal, Equity (if any) in Personal Property | | | $2,000.00 | | $0.00 | $2,000.00 | $0.00 | 0.00 | $0.00 | | $2,000.00 |
| **TOTALS:** | | | $2,002,000.00 | $60,000.00 | $1,940,000.00 | $1,394,277.75 | $547,722.25 | $0.00 | $0.00 | $0.00 | $545,722.25 | $547,722.25 |

| | | | |
|---|---|---|---|
| **FROM EQUITY IN REAL ESTATE:** | | | **$545,722.25** |
| **FROM EQUITY IN PERSONAL PROPERTY:** | | | **$2,000.00** |
| **TOTAL EQUITY AVAILABLE FOR CREDITORS** | | | **$547,722.25** |
| **LESS ADMINISTRATIVE EXPENSES:** | | | |
| Vanden Bos & Chapman | $45,000.00 | | |
| Estimated Trustee Attorney & Accountant fees/costs | $5,000.00 | | |
| | $50,000.00 | **($50,000.00)** | |
| **LESS CHAPTER 7 TRUSTEE FEES:** | | | |
| **Calculation for Trustee's Commission** | | | |
| Sale Price of Real Property (Less Exemption) | $2,000,000.00 | | |
| Sale Price of Personal Property (Less Exemption) | $2,000.00 | | |
| Subtotal: | $2,002,000.00 | | |
| 25% - First $5,000 | $1,250.00 | | |
| 10% - $5,000 - $50,000 | $4,500.00 | | |
| 5% - $50,000 - $1,000,000 | $47,500.00 | | |
| 3% over $1,000,000 | $30,060.00 | | |
| Total | $83,310.00 | **($83,310.00)** | |
| **Subtotal, Available for Creditors** | | | **$414,412.25** |
| **LESS PRIORITY CLAIMS:** | | | **$0.00** |
| **LESS SECURED CLAIMS:** | | | **$0.00** |
| **TOTAL AVAILABLE FOR UNSECUREDS:** | | | **$414,412.25** |

All figures are subject to change until reviewed with tax counsel and/or CPA.